[Civ. No. 15300. Third Dist. July 15, 1976.]

MALIBU WEST SWIMMING CLUB et al.,
Plaintiffs and Appellants, v.
HOUSTON I. FLOURNOY, as State Controller, etc.,
Defendant and Respondent;
BOARD OF SUPERVISORS OF LOS ANGELES COUNTY,
Real Party in Interest and Respondent.

162

## COUNSEL

Earl J. Dunn for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Edward P. Hollingshead, Deputy Attorney General, for Defendant and Respondent.

John H. Larson, County Counsel, and Lawrence B. Launer, Deputy County Counsel, for Real Party in Interest and Respondent.

OPINION

**FRIEDMAN, J.**—Petitioners, who are property owners in the Consolidated Sewer Maintenance District, Trancas Zone ("Trancas Zone") of Los Angeles County, sought a writ of mandate to review a tax rate order issued by the state Controller, who was named as respondent. Real party in interest is the Los Angeles County Board of Supervisors, which is the governing board of Trancas Zone. The trial court denied relief and the taxpayers appeal.

The case revolves around Revenue and Taxation Code section 2274. This statute originated in 1973 legislation, which was designed to place ceilings on ad valorem property tax rates of local public agencies. (Stats. 1973, ch. 358.) In brief, section 2274 sets up a mechanism by which local agencies may secure relief from these ceilings under conditions of danger or emergency. Subdivision (a) of section 2274 permits the local agency to levy an additional rate which will increase its tax revenue by 1 percent in the event of an emergency endangering the public health, safety or welfare or in case of a disaster. If the increase permitted by subdivision (a) is insufficient, subdivision (b) supplies an additional mechanism—the local agency adopts a resolution requesting the state Controller to permit an additional rate; the latter then holds a public hearing; after the hearing he may authorize an additional tax rate if he makes prescribed findings. The statutory description of the requisite findings is quoted in the margin.[1]

In January 1974 the Los Angeles County Board of Supervisors adopted a resolution reciting emergency conditions within the Trancas Zone and

---

[1]Revenue and Taxation Code section 2274, subdivision (b), provides in part: "Upon receipt of the resolution requesting the authorization of an additional amount, the Controller, shall hold a public hearing within the jurisdiction of the local agency or as near thereto as is practicable. At the conclusion of the hearing he shall authorize an additional amount if he makes the following findings: (1) An emergency or general disaster does exist the costs of which cannot be met under the agency's maximum property tax rate and under the additional tax rate provided in subdivision (a). (2) Such costs are the responsibility of the local agency and cannot be met from revenue sources other than the property tax. (3) Such costs are not within the immediate control of the local agency but are due rather to general economic, [environmental], or social conditions, or [any of them], or acts of God. [Environmental conditions shall include orders of the State Water Resources Control Board or regional water quality control boards.] (4) The emergency or general disaster endangers public health, safety or welfare."

The bracketed material was added by an amendment which became effective January 1, 1975, after the events in issue. (Stats. 1974, ch. 457.)

requesting the state Controller to authorize an additional tax rate. In May 1974 the Controller held a hearing and in July 1974 issued an authorization for additional property taxes, finding an emergency which endangered the public health and safety, the costs of which could not be met from available tax rates and other revenue sources.

Petitioners accompanied their mandate petition with a transcript of the testimony at the Controller's hearing. They attacked the evidentiary basis for the finding of emergency and charged a violation of due process standards in that the Controller considered evidence submitted by the County of Los Angeles after the public hearing had closed. There are several reasons why the trial court's denial of relief should be sustained.

■ In setting a tax rate under a statutory delegation of authority, an administrative board or officer acts in a quasi-legislative capacity. (*Franchise Tax Board* v. *Superior Court,* 36 Cal.2d 538, 549 [225 P.2d 905].) The "administrative mandamus statute," Code of Civil Procedure section 1094.5, applies only to administrative adjudications, not to quasi-legislative actions. (*Wilson* v. *Hidden Valley Mun. Water Dist.,* 256 Cal.App.2d 271, 277-278 [63 Cal.Rptr. 889].) A party may seek review of a quasi-legislative action through a "traditional" mandamus proceeding under Code of Civil Procedure section 1085. (*Clean Air Constituency* v. *California State Air Resources Bd.,* 11 Cal.3d 801, 809 [114 Cal.Rptr. 577, 523 P.2d 617].) In the latter kind of proceeding, the scope of judicial review differs from that available under section 1094.5. We discuss the scope of judicial review at a later point.

■ Availability of review by traditional mandamus does not equate with entitlement to it. The writ will not be granted where the petitioner has an adequate remedy in the ordinary course of law. (Code Civ. Proc., § 1086.) The adequacy of other remedies requires an inquiry into the circumstances of the particular case, thus evoking a measure of judicial discretion. (*Rescue Army* v. *Municipal Court,* 28 Cal.2d 460, 466-467 [171 P.2d 8]; 5 Witkin, Cal. Procedure, pp. 3814-3816, 3867.)

Here the trial court held that traditional mandamus was available but that petitioners had an adequate remedy at law by paying the additional taxes under protest and suing to recover. We concur. The writ of mandate is available to control some functions of tax officials. (See 5 Witkin, Cal. Procedure, p. 3848.) It is generally denied when the action's legality may be tested in a tax refund suit. (*Star-Kist Foods, Inc.* v.

*Quinn,* 54 Cal.2d 507, 511 [6 Cal.Rptr. 545, 354 P.2d 1]; *County of Sacramento* v. *Assessment Appeals Bd. No. 2,* 32 Cal.App.3d 654, 671-673 [108 Cal.Rptr. 434].)

Petitioners assert their entitlement to the writ because they are not challenging the functions of local tax officials but rather the administrative inquiry and determination of the state Controller. The assertion stimulates recall of Chief Justice Marshall's classic dictum: "It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined." (*Marbury* v. *Madison,* 5 U.S. (1 Cranch 137) 135, 170 [2 L.Ed. 60, 71].)

The present action of the Controller is an integral part of the successive steps by which Los Angeles County property taxes are levied on property within the Trancas Zone. The steps are governed by a statutory timetable—the board of supervisors must annually as of September 1 fix tax rates and levy taxes in order that the county auditor before September 10 may compute and enter taxes upon the assessment roll, which then becomes the basis for the preparation and mailing of tax bills before November 1 in order that taxpayers may pay their tax installments before the statutory delinquency dates of December 10 and April 10. (See generally, Gould, The California Tax System, 59 West's Ann., Rev. & Tax. Code (1970 ed.) pp. 106-108.) Interference by mandate with this particular action of the Controller is just as incompatible with the statutory timetable as interferences with the rate-setting, levying and billing procedures of county officials. In the individualized inquiry into the adequacy of other judicial remedies, discretion impels restraint upon judicial interferences with this process. The trial court exercised a sound discretion in relegating petitioners to a tax refund suit.

The trial court did not limit itself to the procedural issue, but upheld the Controller's order on the merits. The petitioners and respondents (the latter represented by the State Attorney General and the Los Angeles County Counsel) have briefed the appeal upon the merits. We infer that the parties seek a substantive adjudication rather than a procedural detour. Since the merits have been briefed, it may be that a few paragraphs of dicta will assist in laying the dispute at rest.

Petitioners argue that the Controller's findings of emergency had no evidentiary support, citing a number of decisions which adopt the

Webster's International Dictionary definition of an emergency as "an unforeseen occurrence or combination of circumstances which calls for an immediate action or remedy; pressing necessity, exigency." (*Stevens v. Board of Education,* 9 Cal.App.3d 1017, 1022 [88 Cal.Rptr. 769], and cases cited.) Petitioners contend that the evidence before the Controller established only lack of governmental foresight, not unforeseen circumstances.

The term "emergency" depends upon the circumstances of each case; its central idea is that a sudden or unexpected necessity requires speedy action. (*Los Angeles Dredging Co.* v. *Long Beach,* 210 Cal. 348, 356 [291 P. 839, 71 A.L.R. 161].) Petitioners select one of several alternatives from the dictionary definition, omitting that which speaks merely of a pressing necessity. Where, as here, the statute speaks of an emergency affecting the public health or safety, the vital element is not official prescience or its lack but rather the acuteness of the threat to the public interest. Moreover, the scope of judicial review of the Controller's decision is relatively limited. In reviewing a quasi-legislative action, the court inquires only whether the agency has exceeded its authority or indulged in arbitrary action. (*Clean Air Constituency* v. *California State Air Resources Bd., supra,* 11 Cal.3d at p. 809; *Ralphs Grocery Co.* v. *Reimel,* 69 Cal.2d 172, 179 [70 Cal.Rptr. 407, 444 P.2d 79].) The authorizing legislation may contemplate an action based upon evidence which is judgmental as well as factual. (*Rivera* v. *Division of Industrial Welfare,* 265 Cal.App.2d 576, 590, 595 [71 Cal.Rptr. 739].) The courts will not superimpose their own policy judgment upon that of the agency unless the latter's decision was arbitrary or capricious. (*Ralphs Grocery Co.* v. *Reimel, supra.*)

The circumstances before the Controller are not really in dispute. The sewage disposal plant in the Trancas Zone serves the unincorporated community of West Malibu. For several years preceding 1973, incoming sewage overtaxed the plant's capacity; it discharged more effluent than its leaching beds could handle; raw or inadequately treated sewage on the surface of the disposal area caused a serious health hazard. In 1973 the Regional Water Pollution Control Board directed the county to construct a new plant. Meanwhile the county authorities engaged in a series of temporary remedial activities, including discharge of excess effluent into tank trucks, which transported it to another disposal site. The property tax limitation law subjected the Trancas Zone to the tax

limitations generally applying to local taxing agencies. The new law became effective as an urgency measure on August 31, 1973, thus limiting tax rates for the 1973-1974 fiscal year. (Stats. 1973, ch. 358, § 10.) The new law prevented the levy of sufficient property taxes to finance the interim safety measures of the Trancas sewage disposal plant. If these measures were terminated, inadequately treated effluent would create surface ponds, overflow into nearby drainage channels, cross the beach and enter the ocean. In December 1973 the board of supervisors authorized a loan to the Trancas district of $50,000 from the general fund of the county. The following month the board requested the Controller to take the action here under attack.

The evidence so summarized sufficiently supported the Controller's finding of a pressing necessity, that is, an emergency affecting the public health and safety. Whether in a mandate or tax refund suit, a court would transcend its review power were it to annul the Controller's finding of emergency.

Petitioners' claim of unfairness or violation of due process stems from the circumstance that at the public hearing the Controller's legal adviser requested the Los Angeles County Counsel to submit a legal memorandum on the meaning of the statutory term "emergency." The one-day hearing occurred on May 21, 1974, and the legal memorandum was prepared and sent to the Controller on June 6, 1974.

Petitioners' contention is based upon a misapprehension of the proceedings before the Controller. It was not an adversary or adjudicative proceeding but a public inquiry of a quasi-legislative character. (Cf. *Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control*, 2 Cal.3d 85, 104 [84 Cal.Rptr. 113, 465 P.2d 1].) Several property owners appeared in opposition to the proposed tax rate increase. No one at the hearing requested a copy of the county counsel's memorandum and none was sent to them. In the absence of a request the county counsel was guilty of no evasion or discourtesy in not distributing copies to all who had appeared at the hearing. The post-hearing "evidence" was argumentative, not factual. The extent of confrontation required at quasi-legislative inquiries, the distinction between factual and argumentative evidence and the restrictions upon use of data acquired outside the confines of the hearing process were discussed by this court in *Rivera* v. *Division of Industrial Welfare, supra,* 265 Cal.App.2d at pages 584-593. In view of the standards noted in that decision, the Controller's use of the

county counsel's post-hearing memorandum violated neither the "public hearing" statute nor the procedural dictates of due process.

Judgment affirmed.

Puglia, P. J., and Regan, J., concurred.