[Civ. No. 48929. First Dist., Div. Three. Dec. 26, 1980.]

ROBERTA L. SCHODERBEK et al., Plaintiffs and Appellants, v.
ALFRED E. CARLSON, as Assessor, etc., et al.,
Defendants and Respondents.

COUNSEL

Thomas G. Beatty and R. King Prothro, Jr., for Plaintiffs and Appellants.

George Deukmejian, Attorney General, John J. Klee, Jr., Deputy Attorney General, Selby Brown, Jr., County Counsel, and Byron D. Athan, Deputy County Counsel, for Defendants and Respondents.

OPINION

**WHITE, P. J.**—Fifteen named plaintiffs in their own behalf and on behalf of persons similarly situated brought a class action for declaratory relief, writ of mandate, preliminary and permanent injunction and damages, naming the Assessor of Santa Clara County, Alfred Carlson, the former Assessor of Santa Clara County, the Director of Finance of Santa Clara County, the Tax Collector of Santa Clara County, the Board of Supervisors of Santa Clara County, the State of California

and the State Board of Equalization as defendants.[1] Proposition 13 (art. XIII A of the Cal. Const.), an initiative measure adopted by the People of the State of California in June of 1978, significantly altered the system of real property taxation in this state. Plaintiffs in this case are challenging certain property tax assessment practices in Santa Clara County which began after the passage of Proposition 13.

Plaintiffs moved for summary judgment. Defendants moved for an order staying adjudication of plaintiffs' motion for summary judgment on the ground that the court could not reach the merits of the case prior to the certification of the class. Defendants' motion for an order staying adjudication of plaintiffs' motion for summary judgment was denied. The trial court denied plaintiffs' motion for summary judgment and determined that defendants were entitled to summary judgment. Judgment was entered in favor of defendants. Plaintiffs filed a timely notice of appeal.

Prior to Proposition 13, real property was appraised for taxation purposes every year at its "fair market value" or "full cash value" on the lien date (March 1). (Rev. & Tax. Code, §§ 110, 401.3, 405, 405.5, 2192.) The tax rate was determined by the various local entities. Proposition 13 changed this approach in several major respects. First, the tax rate was limited to 1 percent of the "full cash value" of the property. (Cal. Const., art. XIII A, § 1.) Second, and relevant to this case, the determination of "full cash value" is no longer to be made yearly as of the "lien date." Subdivision (a) of section 2 of article XIII A of the California Constitution covers the subject of when "full cash value" is determined and provides: "The *full cash value means* the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, *thereafter, the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment.* All real property not already assessed up to the 1975-76 full cash value may be reassessed to reflect that valuation. For purposes of this section, the term 'newly constructed' shall not include real property which is reconstructed after a disaster, as de-

---

[1]Plaintiffs seek to represent all members of the class who are owners of real property in Santa Clara County that has been purchased, undergone a change of ownership or been newly constructed subsequent to February 28, 1975 and who have had their real property assessed for the 1978-1979 tax year by a method which is in contravention of article XIII A of the California Constitution (Proposition 13), sections 110 and 110.1 of the Revenue and Taxation Code and rule 460 adopted by the State Board of Equalization (Cal. Admin. Code, tit. 18, § 460).

clared by the Governor, where the fair market value of such real property, as reconstructed, is comparable to its fair market value prior to the disaster." (Italics added.) This appeal concerns the proper interpretation to be given the underscored portion of subdivision (a) of section 1 of article XIII A.

In order to illustrate plaintiffs' contentions in the instant case, it is helpful to set out the history of assessments on one piece of real property owned by a named plaintiff, Jackson Huang. Jackson Huang and his wife Alice Huang purchased their home at 25111 La Loma Drive, Los Altos, California, on December 28, 1976 for $190,000. In March of 1976, the property was valued on the property tax rolls at $135,000. In March of 1977, the property was valued on the property tax rolls at $165,000. In March of 1978, the property was valued on the property tax rolls at $201,300. After the passage of Proposition 13, the Huang property was reappraised and valued at $199,300.

Plaintiffs contend that the "appraised value" for the Huang property is (1) the "full cash value" that appears on the tax rolls for the lien date *preceding* the purchase ($135,000); or (2) the "full cash value" that appears on the tax rolls for the lien date *succeeding* the purchase ($165,000); or (3) a "ratioed" figure, depending on when the purchase took place, of the "full cash value" figures appearing on the tax rolls for the lien dates preceding and succeeding the purchase.[2]

■ Before considering the merits of the instant case, we must first decide if plaintiffs may bring the instant action since they did not allege that they pursued their administrative remedies. A general prerequisite to judicial review of a property tax assessment is application for and denial of relief by the county board of equalization or assessment appeals board.[3] (*Security-First Nat. Bk.* v. *County of L. A.* (1950) 35 Cal.2d 319, 320-321 [217 P.2d 946], cert. den. 340 U.S. 891 [95 L.Ed. 646, 71 S.Ct. 207]; *Virtue Bros.* v. *County of Los Angeles* (1966) 239 Cal. App.2d 220, 231-232 [48 Cal.Rptr. 505], cert. den. 385 U.S. 820 [17 L.Ed.2d 58, 87 S.Ct. 45].) For taxes due and payable on or after March 1, 1977, the administrative remedy is to file a claim for refund

---

[2]Under this last theory, the appraised value for the Huang property would be $135,000 plus 10/12 of the difference between the preceding and subsequent lien date figures.

[3]The county board of supervisors shall sit as the county board of equalization or the county board of supervisors may create an assessment appeals board. (Cal. Const., art. XIII, § 16; Rev. & Tax. Code, §§ 1620-1630.)

with the county board of equalization or assessment appeals board. (Rev. & Tax. Code, §§ 5096, 5097.)[4] An application for a reduction in an assessment filed pursuant to Revenue and Taxation Code section 1603 constitutes a claim for refund if the applicant states in the application that the application is intended to constitute a claim for refund. (Rev. & Tax Code, § 5097, subd. (b).) Revenue and Taxation Code section 5142 provides that a suit for refund may not be brought unless a claim for refund has been filed.

Plaintiffs in the instant case did not allege in their complaint that they had exhausted their administrative remedies. Instead in their brief in this court plaintiffs argue that they should be excused from exhausting their administrative remedies because they represent approximately 138,000 homeowners and this court should not require 138,000 homeowners to go through the expense of pursuing their administrative remedies.[5] Plaintiffs' argument overlooks the simple fact that they could have filed a claim for the refund with the county on behalf of themselves and on behalf of the members of the class they represent. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 454-458 [115 Cal. Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *Lattin* v. *Franchise Tax Board* (1977) 75 Cal.App.3d 377, 380-383 [142 Cal.Rptr. 130]; *Santa Barbara Optical Co.* v. *State Bd. of Equalization* (1975) 47 Cal.App. 3d 244, 247-251 [120 Cal.Rptr. 609].)

---

[4]For taxes that were due prior to March 1, 1977, the taxpayer could either pay his property taxes under protest followed by a suit for refund (in the superior court) or file a claim for refund and pursue his administrative remedies before filing a suit for refund. (Former Rev. & Tax. Code, §§ 5096-5107, 5136-5143.) For taxes due on and after March 1, 1977, the Legislature abolished the prior alternative remedy of payment under protest followed by a suit for refund. In the instant case we are concerned with taxes due on or after March 1, 1977.

[5]Plaintiffs' counsel asserted at oral argument that some of the plaintiffs filed applications for a reduction in their assessment. However, plaintiffs' counsel did not allege that any of the named plaintiffs filed a class claim for refund, nor that any of the plaintiffs *exhausted* their administrative remedies. Furthermore, there is nothing in the record before this court to demonstrate that any of the plaintiffs pursued their administrative remedies.

Plaintiffs' counsel argued at oral argument that plaintiffs were excused from exhausting their administrative remedies because no question of fact is presented in this case. First, we note that it was plaintiffs' burden to plead that they exhausted their administrative remedies or that facts exist which excuse that action. (*Westinghouse Elec. Corp.* v. *County of Los Angeles* (1974) 42 Cal.App.3d 32, 37 [116 Cal.Rptr. 742].) Plaintiffs' complaint does not contain these necessary allegations. Although we are not required to consider any of the reasons advanced by plaintiffs for excusing their failure

Defendants allege that class claims for refund may not be filed to test the validity of local ad valorem property taxes. Defendants point to the language of Revenue and Taxation Code section 5097 which provides in part: "(a) No order for a refund under this article shall be made, except on a claim: [¶] (1) Verified by the person who paid the tax, his guardian, executor, or administrator." Defendants assert that section 5097 provides a limitation with regard to the person who can file a claim for refund. Defendants claim that section 5097 does not permit a representative of a class to file a claim.

In *Lattin v. Franchise Tax Board, supra,* 75 Cal.App.3d 377, the court determined that a taxpayer could file a claim for refund for income taxes as representative of a class. However, in regard to a claim for refund of income taxes the statute only specifies that: "Every claim for refund shall be in writing and shall state the specific grounds upon which it is founded." (Rev. & Tax. Code, § 19055.)

In *Santa Barbara Optical Co. v. State Bd. of Equalization, supra,* 47 Cal.App.3d 244, the court determined that a taxpayer could file a claim for refund for sales and use taxes as a representative of a class. Section 6904 of the Revenue and Taxation Code provides that a claim for refund of sales and use taxes "shall be in writing and shall state the specific grounds upon which the claim is founded." The State Board of Equalization in *Santa Barbara Optical* argued that a claim for refund which does not expressly identify a claimant by his correct name and account number and fails to set forth the specific amount of the refund fails to meet the statutory requirements for a proper claim. (*Id.,* at p.

to exhaust their administrative remedies because they failed to plead same, we will do so briefly.

Exhaustion of administrative remedies is not excused because there is no question of fact unless the property assessed was tax exempt, outside the jurisdiction or nonexistent, or the constitutionality of a taxing statute is challenged. (*Star-Kist Foods, Inc.* v. *Quinn* (1960) 54 Cal.2d 507, 509-511 [6 Cal.Rptr. 545, 354 P.2d 1].) In the case at bench plaintiffs plead none of these circumstances.

Plaintiffs' counsel also asserted at oral argument that plaintiffs should be excused from exhausting their administrative remedies because some taxpayers have been denied relief by the assessment appeals board and because the local administrative bodies refuse to consider the issues they are raising. "[T]he administrative denial of relief in other cases has been held to be no excuse for failure to first take advantage of available administrative remedies." (*Virtue Bros.* v. *County of Los Angeles, supra,* 239 Cal. App.2d 220, 232.) If plaintiffs pursue their administrative remedies and the local board refuses to consider their claim, they may seek a writ of mandate to compel the board to hear the case. (*Midstate Theatres, Inc.* v. *Board of Supervisors* (1975) 46 Cal.App.3d 204 [119 Cal.Rptr. 894].)

Plaintiffs have failed to plead any excuse for failing to exhaust their administrative remedies and they have not presented any excuse to this court.

247.) The court, relying upon *City of San Jose* v. *Superior Court, supra*, 12 Cal.3d 447, rejected this contention.

In *City of San Jose*, plaintiffs had filed an action against the City of San Jose on behalf of themselves and all real property owners situated in the flight pattern of the San Jose Municipal Airport, seeking recovery for diminution in the market value of their property caused by aircraft noise, vapor, dust and vibration. (*City of San Jose* v. *Superior Court, supra*, at pp. 452-453.) The court noted the well-settled rule that in actions against local public entities, the claim statutes require timely filing of a proper claim as a condition precedent to the maintenance of the action. (*Id.*, at p. 454; Gov. Code, §§ 905, 955.4.) The court in *City of San Jose* was concerned with the claim requirements stated in Government Code section 910 which provides: "A claim shall be presented by the claimant or by a person acting on his behalf and shall show:

"(a) The name and post office address of the claimant;

"(b) The post office address to which the person presenting the claim desires notices to be sent;

"(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;

"(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;

"(e) The name or names of the public employee or employees causing the injury, damage, or loss, if known; and

"(f) The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed."

The court in *City of San Jose* rejected defendant's contention that it is impossible for a class claim to satisfy the claim statute and, therefore, the statute prohibits the maintenance of a class action against government entities. The court held that there is a policy favoring the maintenance of appropriate class actions and that there must only be

*substantial compliance*[6] with all the statutory requirements stating: "We conclude 'claimant,' as used in section 910, must be equated with the class itself and therefore reject the suggested necessity for filing an individual claim for each member of the purported class. To require such detailed information in advance of the complaint would severely restrict the maintenance of appropriate class actions—contrary to recognized policy favoring them. (Code Civ. Proc., § 382; see also *Vasquez v. Superior Court, supra,* 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) We do not believe the claims statutes were intended to thwart class relief.

"Moreover, treating the class as claimant is consistent with treatment of the class for purposes of filing the complaint. While section 422.40 of the Code of Civil Procedure requires a complaint to name the 'parties,' it is settled the pleading need only establish the existence of an ascertainable class rather than name each member of the class. (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 706. . . .)

"Thus, to satisfy the claim statutes, the class claim must provide the name, address, and other specified information concerning the *representative* plaintiff and then sufficient information to identify and make ascertainable the class itself. Because such information would meet the statutory requirements of name and address, *any* effort to identify the class would satisfy the *some compliance* test. Beyond this, the sufficiency of the identifying information must be measured by the *substantial compliance* test.

"It is therefore clear a class claim may satisfy the claims statutes requirements." (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 457.)

In *Lattin* and *Santa Barbara Optical Co.*, the courts held that the sufficiency of a class claim for refund of taxes will be measured by *City of San Jose's* substantial compliance test. (*Lattin v. Franchise Tax Board, supra,* 75 Cal.App.3d 377, 381-382; *Santa Barbara Optical Co. v. State Bd. of Equalization, supra,* 47 Cal.App.3d 244, 247-251.) We see no reason not to apply the substantial compliance test to class claims for refund of ad valorem property taxes. As noted earlier, section

---

[6]The court stated the test of substantial compliance as follows: "Is there sufficient information disclosed on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit?" (*City of San Jose v. Superior Court, supra,* at p. 456.)

5097 requires a claim for refund to be verified by the person who paid the tax. This requirement may be substantially complied with by having representatives of the class verify the claim for refund for the class.

Defendants also contend that a class action suit for refund may not be filed after a claim for refund has been denied because of the following italicized language of Revenue and Taxation Code section 5140: "The person who paid the tax, his guardian, the executor of his will, or the administrator of his estate may bring an action in the superior court against a county or a city to recover a tax which the board of supervisors of the county or the city council of the city has refused to refund on a claim filed pursuant to Article 1 (commencing with Section 5096) of this chapter. *No other person may bring such an action;* but if another should do so, judgment shall not be rendered for the plaintiff." (Italics added.) The limitation contained in section 5140 simply means that only a person who has actually paid the tax may bring an action as opposed to the situation where someone else pays the property taxes of an owner of property. (*Easton* v. *County of Alameda* (1937) 9 Cal.2d 301 [70 P.2d 640].) In the context of class actions this means that a plaintiff could only represent a class which consists of members who have actually paid the tax; it does not preclude the maintenance of a class action suit for refund.

We therefore conclude that plaintiffs may not bring the instant action because they have not exhausted their administrative remedies. Nor are plaintiffs entitled to declaratory relief. A person may bring a declaratory relief action under Government Code section 11350 to obtain a judicial determination of a tax regulation. (*Pacific Motor Transport Co.* v. *State Bd. of Equalization* (1972) 28 Cal.App.3d 230 [104 Cal.Rptr. 558].) In the case at bar, we are not concerned with the validity of a tax regulation.

Plaintiffs also sought an injunction and a writ of mandate. Neither of these remedies is available when a taxpayer has an adequate remedy at law—a claim for refund followed by a suit for refund.[7] (*Star-Kist*

---

[7]It should be noted that plaintiffs sought an injunction "enjoining the defendants from further assessing and collecting property taxes" in what they contend is an erroneous manner. Revenue and Taxation Code section 4807 precludes such relief. Section 4807 provides: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against any county, municipality, or district, or any officer thereof, to prevent or enjoin the collection of property taxes sought to be collected."

*Foods, Inc.* v. *Quinn, supra,* 54 Cal.2d 507, 511; *Security-First Nat. Bank* v. *Bd. of Supervisors* (1950) 35 Cal.2d 323, 327 [217 P.2d 948], *Sherman* v. *Quinn* (1948) 31 Cal.2d 661, 665 [192 P.2d 17]; *Malibu West Swimming Club* v. *Flournoy* (1976) 60 Cal.App.3d 161, 164 [131 Cal.Rptr. 279]; *Valley Fair Fashions, Inc.* v. *Valley Fair* (1966) 245 Cal.App.2d 614, 616 [54 Cal.Rptr. 306].)

Even if we had determined that a class action was not proper, we are not convinced that plaintiffs' remedies at law are not adequate. If a few taxpayers were successful in advancing the position proposed by plaintiffs, we do not feel that all other taxpayers in the same situation would have to pursue their remedies in the same fashion. We would assume that the taxing authorities would follow the determination rendered the first successful taxpayer. (*Mandel* v. *Hutchinson* (9th Cir. 1974) 494 F.2d 364, 367; *Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277, 283 [165 Cal.Rptr. 122, 611 P.2d 463].)

The judgment of the trial court is vacated. The action is remanded to the superior court with directions to dismiss the action if plaintiffs cannot plead that they have exhausted their administrative remedies or a proper excuse therefor.[8]

Feinberg, J., and Barry-Deal, J., concurred.

---

[8]We have not reached the merits of plaintiffs' contentions. Our decision is based solely on plaintiffs' failure to exhaust their administrative remedies. Accordingly, plaintiffs are not precluded from raising the merits of their claims before the proper administrative bodies, and if unsuccessful, from filing a suit for refund.