[No. B198118. Second Dist., Div. Three. Jan. 24, 2008.]

COUNTY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOE ORONOZ et al., Real Parties in Interest.

## COUNSEL

Jones Day, Elwood Lui and Brian D. Hershman for Petitioner.

No appearance for Respondent.

Huskinson & Brown, Paul E. Heidenreich, David W. T. Brown; Bernard & Bernard and Stephen Bernard for Real Parties in Interest.

## OPINION

**CROSKEY, J.**—Joe Oronoz, Larry Pitts, Craig Kaufman, and Cheryl Kaufman filed two separate class action complaints against the County of Los Angeles. Plaintiffs allege that the county imposed new utility user taxes without prior approval by the voters as required by law. They also allege that the collection of utility user taxes from persons residing or operating businesses in unincorporated areas of the county, but not from those residing or operating businesses in incorporated areas, violates equal protection. The superior court consolidated the two actions and certified the consolidated action as a class action. The county petitioned this court for a writ of mandate, challenging the class certification.

The county contends the order granting class certification was error because the county's claims ordinance did not authorize class claims, and plaintiffs' claim did not strictly comply with the claims ordinance requirements. The county contends *Woosley v. State of California* (1992) 3 Cal.4th 758 [13 Cal.Rptr.2d 30, 838 P.2d 758] (*Woosley*) requires strict compliance with claims presentation requirements and the rule from *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 456–457 [115 Cal.Rptr. 797, 525 P.2d 701] (*San Jose*), that class claims are permissible under Government Code section 910 is inapplicable. We conclude that the rule from *San Jose*, rather than *Woosley*, governs tax refund claims under Government Code section 910 absent a specific tax refund statute, that class claims are permissible under section 910, and that the county's claims ordinance is inapplicable. We decline to follow overbroad language in other Court of Appeal opinions stating that class action claims are not allowed in any tax refund litigation. We conclude that the county has not shown error and deny the petition.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Joe Oronoz, on behalf of himself "and all others similarly situated," presented a claim to the county in February 2005 seeking damages for purportedly illegal utility user taxes collected since 1995 from persons residing in unincorporated areas of the county. The county did not act on the claim.

Oronoz and Larry Pitts filed a class action complaint in May 2005 (Super. Ct. L.A. County, No. BC334027) alleging that utility user taxes are imposed through telephone bills, electricity bills, and gas bills of utility companies and remitted to the county. Plaintiffs alleged that the county established the utility user taxes in January 1991 by enacting the Utility User Tax Ordinance (L.A. County Code, § 4.62.010 et seq.). They alleged that the taxes are imposed only on persons who reside or operate businesses in unincorporated areas of the county, and that the funds go to the county's general fund and are not segregated for particular uses. Plaintiffs alleged that voter approval of the taxes was required by Propositions 13 and 62,[1] and that the county never sought or obtained voter approval. They alleged that the plaintiff class had presented a claim to the county and that the county had not accepted the claim. Plaintiffs alleged counts for (1) violation of Proposition 62, (2) violation of Proposition 13, (3) violation of equal protection under the California and federal Constitutions, and (4) declaratory relief.

---

[1] Proposition 13, approved by California voters in June 1978, added article XIII A to the California Constitution. Proposition 62, approved by California voters in November 1986, added section 53720 et seq. to the Government Code.

Craig Kaufman and Cheryl Kaufman filed a similar complaint in May 2005 (Super. Ct. L.A. County, No. BC334145) alleging the same four counts. They also alleged that the county had not accepted a claim presented on behalf of the plaintiff class. The court later consolidated the two actions.

The county demurred to the complaint by Oronoz and Pitts, arguing, among other things, that plaintiffs had failed to allege that each member of the class had presented a claim to the county prior to filing suit. The county argued that the claim presented by Oronoz purportedly on behalf of the other class members was unauthorized.[2] The court overruled the demurrer to the first, second, and fourth counts and sustained the demurrer to the third count, on another basis, with leave to amend. Plaintiffs then filed a consolidated first amended complaint in December 2005 alleging the same four counts.

Plaintiffs moved for class certification in August 2006. The county opposed the motion, arguing, among other things, that the purported class members other than Oronoz were not entitled to relief because they failed to present an individual claim for a tax refund for each class member. The court granted the motion for class certification and certified the action as a class action in an order filed on January 4, 2007.

The county filed a motion to decertify the class in February 2007, renewing its argument that each member of the plaintiff class was required to present a claim before filing suit and that the class claim presented by Oronoz on behalf of others similarly situated was invalid as to persons other than Oronoz. The court denied the motion and stayed the proceedings to allow the county to petition this court for an extraordinary writ.

The county filed a petition for a writ of mandate challenging the class certification order. We issued an order to show cause and stayed all trial court proceedings in order to decide the important legal questions presented.

### CONTENTIONS

The county contends class members who failed to present individual claims against the county cannot maintain this action because they failed to comply with the county's claims presentation requirements. The county contends (1) a class claim for a tax refund is permissible only if the Legislature

---

[2] The county requested we take judicial notice of the claim for damages dated February 15, 2005, presented by Oronoz.

expressly authorized class claims, and the claim must strictly comply with the prescribed requirements; (2) the county's claims ordinance does not expressly authorize a class claim for a tax refund; and (3) plaintiffs' claim did not strictly comply with the claims ordinance requirements. We discuss the parties' contentions in more detail in part 6. of the Discussion, *post.*

## DISCUSSION

### 1. *Standard of Review*

We review an order granting class certification for abuse of discretion. A trial court is accorded great discretion in ruling on class certification. A ruling supported by substantial evidence generally will not be disturbed unless it is based on either an improper criterion or an erroneous legal assumption. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27].) The county challenges the order here based on what the county contends were erroneous legal assumptions with respect to the validity of the plaintiffs' class claim. We review those questions of law de novo.

### 2. *Claims Presentation Requirement of the Government Claims Act*

■ The Government Claims Act (Gov. Code, § 900 et seq.) provides that, with certain specified exceptions, a person seeking to sue the state or a local public entity for money or damages must first present a claim to either the Victim Compensation and Government Claims Board, if against the state, or the local public entity. (*Id.*, §§ 905, 905.2, 915, subds. (a), (b), 945.4.) Government Code section 910 states:

"A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following:

"(a) The name and post office address of the claimant.

"(b) The post office address to which the person presenting the claim desires notices to be sent.

"(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

"(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.

"(e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.

"(f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case."

■ The public entity must act on the claim within 45 days after the claim was presented, unless the parties agree to extend the period. (Gov. Code, § 912.4, subds. (a), (b).) If the public entity fails to act within the time provided, the claim is deemed rejected. (*Id.*, § 912.4, subd. (c).) The public entity must provide written notice of its action on the claim or of the claim's rejection by operation of law. (*Id.*, § 913.)

■ The purpose of requiring a claim is " 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.]' [Citation.]" (*Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 705 [263 Cal.Rptr. 119, 780 P.2d 349].) Accordingly, a claim under Government Code section 910 is sufficient if (1) there is "*some* compliance with *all* of the statutory requirements"; and (2) the claim discloses sufficient information to enable the public entity adequately to investigate the merits of the claim so as to settle the claim, if appropriate. (*San Jose, supra*, 12 Cal.3d at pp. 456–457.) The latter inquiry is known as the substantial compliance test. (*Ibid.*)

■ Government Code section 905, subdivision (a) states that the claims presentation requirement concerning claims for money or damages against local public entities does not apply to "[c]laims under the Revenue and Taxation Code or other *statute* prescribing procedures for the refund, rebate, exemption, cancellation, amendment, modification, or adjustment of any tax, assessment, fee, or charge or any portion thereof, or of any penalties, costs or charges related thereto."[3] (Italics added.) Section 905, subdivision (a) does not except plaintiffs' claim from the Government Claims Act claims presentation requirement because no statute other than the Government Claims Act

---

[3] Government Code section 935, subdivision (a) states that claims for money or damages against a local public entity that are excepted from the claims presentation requirement by section 905, and "are not governed by any other statutes or regulations expressly relating thereto," are governed by the procedure prescribed in any charter, ordinance, or regulation adopted by the local public entity. Chapter 4.04 of the Los Angeles County Code (County Code) prescribes procedures for such claims, as discussed *post.*

statutes prescribes procedures to claim a refund or other adjustment of the county's utility user taxes.[4] Section 4.04.050 of the county code, which governs certain claims against the county, is not a "statute" within the meaning of Government Code section 905, subdivision (a) and therefore does not invoke section 905, subdivision (a). (Gov. Code, § 811.8 [defines "statute" for purposes of tit. 1, div. 3.6 of the Gov. Code, which includes § 905, as "an act adopted by the Legislature of this State or by the Congress of the United States, or a statewide initiative act"]; *Volkswagen Pacific, Inc. v. City of Los Angeles* (1972) 7 Cal.3d 48, 62 [101 Cal.Rptr. 869, 496 P.2d 1237] [held that tax refund claims procedures prescribed by a city ordinance and charter provision did not establish an exception under § 905, subd. (a) because the local enactments were not statutes].)

### 3. *Los Angeles County Code Chapter 4.04*

■  Los Angeles County Code chapter 4.04 (§ 4.04.010 et seq.) establishes a claims presentation requirement for certain claims against the county and prescribes procedures for those claims. County Code section 4.04.010 states: "Pursuant to Section 935 of the Government Code, all claims against the county of Los Angeles for money or damages which are excepted by Section 905 of the Government Code from the provisions of Division 3.6 of the Government Code (Section 810 et seq.), and which are not governed by any other statutes or regulations expressly relating thereto, shall be governed by the procedure prescribed in this chapter." Section 4.04.050 prescribes certain procedural requirements for such a claim and states that the claim must comply with the requirements of Government Code section 910.

Plaintiffs argued in the trial court, and the trial court concluded, that section 4.04.050 of the county code governs the claim here. The county also argues that section 4.04.050 applies. We construe the plain language of section 4.04.010 to mean that chapter 4.04 of the county code applies to a claim only if the claim (1) is excepted from the Government Claims Act claims presentation requirement by Government Code section 905, and (2) is not governed by any other statute or regulation expressly relating to the claim. Our conclusion that Government Code section 905 does not except plaintiffs' claim from the Government Claims Act claims presentation requirement compels the conclusion that chapter 4.04 of the county code, including County Code section 4.04.050, does not apply.[5]

---

[4] The other exceptions to the claims presentation requirement stated in Government Code section 905, subdivisions (b) through (*l*) also are inapplicable.

[5] The county board of supervisors amended County Code section 4.04.050 in March 2007, after the order granting class certification. The parties dispute the significance of those amendments. In light of our conclusion that section 4.04.050 does not apply, we need not decide the significance of the amendments.

### 4. *City of San Jose v. Superior Court*

■ *San Jose, supra*, 12 Cal.3d 447, involved a class action complaint by plaintiffs alleging nuisance and inverse condemnation arising from aircraft overflights. The plaintiffs' class claim presented to the city was governed by Government Code section 910. (*San Jose, supra*, at p. 455.) The city petitioned for a writ of mandate challenging the court's certification of the case as a class action. (*Id.* at pp. 452–453.) *San Jose* stated with respect to claims governed by section 910, "we conclude that to gauge the sufficiency of a particular claim, *two* tests shall be applied: Is there *some* compliance with *all* of the statutory requirements; and, if so, is this compliance sufficient to constitute *substantial* compliance?" (*San Jose, supra*, at pp. 456–457.) For purposes of the "some compliance" test, the *San Jose* court construed Government Code section 910 and concluded that, in a class action, "claimant" in section 910 refers to the class itself rather than to each individual class member. (*San Jose, supra*, at p. 457.) *San Jose* stated: "We conclude 'claimant,' as used in section 910, must be equated with the class itself and therefore reject the suggested necessity for filing an individual claim for each member of the purported class. To require such detailed information in advance of the complaint would severely restrict the maintenance of appropriate class actions—contrary to recognized policy favoring them. [Citations.] We do not believe the claims statutes were intended to thwart class relief. [Fn. omitted.]" (*Ibid.*)

*San Jose* stated further: "[T]o satisfy the claims statutes, the class claim must provide the name, address, and other specified information concerning the *representative* plaintiff and then sufficient information to identify and make ascertainable the class itself. Because such information would meet the statutory requirements of name and address, *any* effort to identify the class would satisfy the *some compliance* test. Beyond this, the sufficiency of the identifying information must be measured by the *substantial compliance* test." (*San Jose, supra*, 12 Cal.3d at p. 457.)

### 5. *Woosley v. State of California*

*Woosley, supra*, 3 Cal.4th 758, involved a class action by a plaintiff alleging that the state Department of Motor Vehicles had improperly charged higher annual vehicle license fees and user taxes for vehicles originally purchased outside of California than for vehicles purchased within the state. (*Id.* at p. 765.) The trial court certified two plaintiff classes and, after a nonjury trial, awarded a judgment against the state. (*Id.* at pp. 767, 774.) The Court of Appeal affirmed the judgment against the state. (*Id.* at p. 775.) The California Supreme Court concluded that article XIII, section 32 of the California Constitution required the action for tax refunds to be brought

in the manner prescribed by the Legislature. (*Woosley, supra*, at p. 789.) Construing the statutes governing refunds of the taxes at issue (Veh. Code, § 42231; Rev. & Tax. Code, §§ 6901 et seq., 6486), the court held that those statutes did not permit class claims. (*Woosley, supra*, at pp. 789–792.) *Woosley* therefore held that a class claim was unauthorized and that the plaintiff class could include only those persons who timely filed valid claims. (*Id.* at p. 795.)

*Woosley* stated that article XIII, section 32 of the California Constitution[6] "expressly provides that actions for tax refunds must be brought in the manner prescribed by the Legislature," and that "[t]his constitutional limitation rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues. [Citation.]" (*Woosley, supra*, 3 Cal.4th at p. 789.) *Woosley* stated further that article XIII, section 32 "precludes this court from expanding the methods for seeking tax refunds expressly provided by the Legislature." (*Woosley, supra*, at p. 792.)

*Woosley* construed the statutes enacted by the Legislature governing refunds of vehicle license fees and use taxes and determined that those statutes neither contemplated nor authorized class claims. (*Woosley, supra*, 3 Cal.4th at pp. 789–792.) *Woosley* stated with respect to vehicle license fees: "[A] claim for a refund of vehicle license fees must be filed by '*the person* who has paid the erroneous or excessive fee or penalty, *or his agent on his behalf.*' (Veh. Code § 42231, italics added.) Within the context of this statute, the term 'person' does not include a class, and a class representative who files a claim on behalf of all others similarly situated, without the knowledge or consent of such other persons, is not the agent of the members of the class. (Civ. Code, §§ 2299, 2300; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency & Employment, §§ 36–40, pp. 49–52.) Accordingly, a class claim for refunds of vehicle license fees, such as the one here at issue, is not authorized by statute. [Fn. omitted.]" (*Woosley, supra*, 3 Cal.4th at p. 790.)

*Woosley* stated with respect to use taxes: "An examination of the entire statutory scheme that governed requests for refunds of sales and use taxes when Woosley's claim was filed in 1977 reveals, however, that class claims

---

[6] "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." (Cal. Const., art. XIII, § 32.) "Section 32 applies only to actions against the state. (*Eisley* v. *Mohan* (1948) 31 Cal.2d 637, 641 [192 P.2d 5].)" (*Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 281, fn. 6 [165 Cal.Rptr. 122, 611 P.2d 463].) "[T]he section applies only to an action against the state or an officer thereof with respect to his duties in assessing or collecting a state tax for state purposes." (*Eisley, supra*, at p. 641.)

were not contemplated. If the SBE [State Board of Equalization] denied a claim, that entity was required, within 30 days, to 'serve notice of its action on the claimant in the manner prescribed for service of notice of a deficiency determination.' ([Rev. & Tax. Code,] § 6906.) [Revenue and Taxation Code] [s]ection 6486, in turn, provided in 1977 that the SBE shall give written notice of a deficiency determination 'to the retailer or person storing, using, or consuming tangible personal property,' either by mail or by 'delivering it to the person to be served.' The language of section 6486 suggests that notice must be given to each individual taxpayer. No mention is made of notice to a class representative. The requirement that notice of the denial of a claim must be given to each individual taxpayer thus is inconsistent with the use of a class claim." (*Woosley, supra,* 3 Cal.4th at pp. 790–791.)

*Woosley* stated that *San Jose, supra,* 12 Cal.3d 447, did not "compel[] the conclusion that class claims may be employed to seek tax refunds." (*Woosley, supra,* 3 Cal.4th at p. 788.) *Woosley* cited several opinions in which the Courts of Appeal, "reasoning by analogy to the claims statute construed in *City of San Jose,* [concluded] that the existing tax-refund statutes could and should be interpreted to authorize the filing of class claims." (*Ibid.*) Each of those Court of Appeal opinions involved either (1) a claim for refund of taxes paid to the state for which there were specific statutes, other than the Government Claims Act provisions, governing the tax refund claims procedure (see *Lattin v. Franchise Tax Board* (1977) 75 Cal.App.3d 377 [142 Cal.Rptr. 130] [state income tax]; *Santa Barbara Optical Co. v. State Bd. of Equalization* (1975) 47 Cal.App.3d 244 [120 Cal.Rptr. 609] [state sales tax]; *Javor v. State Bd. of Equalization* (1977) 73 Cal.App.3d 939 [141 Cal.Rptr. 226] [state sales tax]), or (2) a claim for refund of county property taxes for which there were specific statutes, other than the Government Claims Act provisions, governing the tax refund claims procedure (see *Schoderbek v. Carlson* (1980) 113 Cal.App.3d 1029 [170 Cal.Rptr. 400]).[7] *Woosley* stated, "Contrary to the line of Court of Appeal decisions cited above, we conclude, for the reasons that follow, that the holding in *City of San Jose v. Superior Court, supra,* 12 Cal.3d 447, should not be extended to include claims for tax

---

[7] Unlike the other Court of Appeal opinions cited in *Woosley, supra,* 3 Cal.4th at page 788, involving actions against the state for the refund of state taxes, *Schoderbek v. Carlson, supra,* 113 Cal.App.3d 1029, involved an action against county officials for the refund of county property taxes. Although *Woosley* did not distinguish *Schoderbek* on that basis, *Woosley* also did not state that the constitutional restriction on the manner of seeking a tax refund (Cal. Const., art. XIII, § 32) applied to actions against local public entities for the refund of local taxes. *Schoderbek* had discussed and relied on *Lattin v. Franchise Tax Board, supra,* 75 Cal.App.3d 377, and *Santa Barbara Optical Co. v. State Bd. of Equalization, supra,* 47 Cal.App.3d 244, both of which involved state taxes. (*Schoderbek, supra,* 113 Cal.App.3d at pp. 1033–1036.) *Woosley* did not specifically disapprove the holding in *Schoderbek.* Rather, *Woosley* disapproved *Schoderbek, Lattin, Santa Barbara Optical,* and *Javor v. State Bd. of Equalization, supra,* 73 Cal.App.3d 939, only "to the extent they express views to the contrary" of the conclusion stated in Woosley. (*Woosley, supra,* 3 Cal.4th at p. 792.)

refunds." (*Woosley, supra,* 3 Cal.4th at p. 789.) *Woosley* then explained that article XIII, section 32 of the California Constitution requires compliance with statutes enacted by the Legislature governing tax refunds and construed the particular tax refund statutes at issue, as stated *ante. Woosley* did not disapprove *San Jose* or suggest that its holding with respect to claims under Government Code section 910 should be limited, but refused to extend the holding in *San Jose* to tax refund claims governed by other statutes.

*Farrar v. Franchise Tax Bd.* (1993) 15 Cal.App.4th 10, 20–21 [18 Cal.Rptr.2d 611], followed *Woosley, supra,* 3 Cal.4th 758, by holding that a state tax refund claim must strictly comply with the procedures prescribed by the statute governing the claim (Rev. & Tax. Code, former § 19055). *Neecke v. City of Mill Valley* (1995) 39 Cal.App.4th 946, 961–962 [46 Cal.Rptr.2d 266], extended the rule from *Woosley* by holding that a local tax refund claim must strictly comply with the procedures prescribed by the statute governing the claim (Rev. & Tax. Code, § 5097). Statutes other than Government Code section 910 governed the tax refunds in both *Farrar* and *Neecke,* and those opinions did not hold that class claims were impermissible under section 910 or apply the strict compliance test to claims under section 910.[8] *Howard Jarvis Taxpayers Assn. v. City of Los Angeles* (2000) 79 Cal.App.4th 242, 249–250 [93 Cal.Rptr.2d 742], extended the rule from *Woosley* further still by holding, with little discussion and without reference to a governing statute, that *Woosley* and its progeny compelled the conclusion that each person on whose behalf the plaintiff association sought a refund of city taxes must present a claim to the city pursuant to a city ordinance and charter provision.[9]

---

[8] The holding in *Woosley, supra,* 3 Cal.4th 758, that statutes specifically governing tax refund claims must be strictly construed was based on article XIII, section 32 of the California Constitution, which applies only to actions against the state, as stated *ante.* For this reason and for the reasons stated in footnote 7, *ante,* we question the conclusion in *Neecke v. City of Mill Valley, supra,* 39 Cal.App.4th at pages 962–963, that *Woosley*'s disapproval of *Schoderbek v. Carlson, supra,* 113 Cal.App.3d 1029, indicates that the *Woosley* court intended its holding to apply not only to claims against the state for the refund of state taxes but also to claims against local public entities for the refund of local taxes. We need not decide the point, however, because the rule stated in *Neecke* would apply only if a statute other than Government Code section 910 governed the tax refund claim, which is not the case here.

[9] We find no basis in *Woosley, supra,* 3 Cal.4th 758, or its progeny for the overbroad statement in *Howard Jarvis Taxpayers Assn. v. City of Los Angeles, supra,* 79 Cal.App.4th at page 249, that "class-action-type lawsuits seeking a refund of fees and taxes are barred unless each plaintiff has first filed an administrative refund claim with the City," particularly as applied to claims against local public entities that are not governed by specific tax refund statutes. We therefore decline to follow that opinion.

The same court that decided *Neecke v. City of Mill Valley, supra,* 39 Cal.App.4th 946, recently endorsed the holding from that opinion and the above-quoted statement from *Howard Jarvis Taxpayers Assn. v. City of Los Angeles, supra,* 79 Cal.App.4th at page 249. (*Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 74–77 [65 Cal.Rptr.3d 716].) *Batt* held that the plaintiff's class claims for tax refunds were improper because the governing local ordinance expressly prohibited class claims for tax refunds. (*Id.* at pp. 79, 84.) *Batt* stated

### 6. *Plaintiffs' Class Claim Was Proper*

The foregoing discussion of the governing law helps to frame the parties' specific arguments to this court.[10] The county argues that (1) the claims procedure in chapter 4.04 of the county code governs plaintiffs' claim because there is no other statute or regulation expressly relating to and governing the claim; (2) *Woosley, supra,* 3 Cal.4th 758, held that class claims for tax refunds are not allowed unless the Legislature expressly authorized class claims, and the county's claims ordinance (L.A. County Code, ch. 4.04) does not expressly authorize class claims for tax refunds; and (3) *Woosley* requires strict compliance with claims presentation requirements in tax refund actions, and plaintiffs did not strictly comply with the requirements of County Code section 4.04.050.

Plaintiffs argue that (1) Government Code section 905, subdivision (a) excepts tax refund claims against the county from the Government Claims Act claims presentation requirement because the claims procedures set forth in chapter 4.04 of the county code constitute an "other statute prescribing procedures for the refund . . . of any tax" (Gov. Code, § 905, subd. (a), quoted in full *ante*); (2) chapter 4.04 of the county code applies to tax refund claims against the county because those claims "are excepted by section 905 of the Government Code" (L.A. County Code, § 4.04.010, quoted in full *ante*); (3) County Code section 4.04.050 should be construed in accordance with the construction of similar language in Government Code section 910 by the court in *San Jose, supra,* 12 Cal.3d 447, and, so construed, section 4.04.050 authorizes class claims; (4) section 4.04.060 of the county code incorporates Government Code provisions that establish a substantial compliance standard, and plaintiffs' claim substantially complied with the requirements of County Code section 4.04.050; and (5) *Woosley, supra,* 3 Cal.4th 758, and its progeny involved other tax refund statutes and therefore are inapposite.

Thus, both the county and plaintiffs maintain that chapter 4.04 of the county code applies. As already indicated, we disagree. The county reaches this conclusion by (1) overlooking the part of County Code section 4.04.010 that states that chapter 4.04 applies to a claim *only if Government Code section 905 excepts the claim from the Government Claims Act claims presentation*

---

further, in dictum, that *Woosley, supra,* 3 Cal.4th 758, as interpreted in *Neecke* and *Howard Jarvis Taxpayers Assn.,* compelled the conclusion that "California has opted to allow class actions in tax refund cases only where specifically authorized by statute." (*Batt, supra,* at p. 77.) We decline to follow that overbroad dictum for the reasons we have stated.

[10] The parties also offer several related arguments in addition to those discussed in this opinion that we need not address.

*requirement*, and (2) disregarding Government Code section 905.[11] Plaintiffs reach the same conclusion by way of a circular argument that County Code chapter 4.04 prescribes procedures for tax refund claims against the county and therefore is excepted by Government Code section 905, subdivision (a) because chapter 4.04 establishes procedures for claims against the county that are excepted by Government Code section 905, subdivision (a).[12] We have already explained our conclusions that Government Code section 905, subdivision (a) does not except plaintiffs' claim from the Government Claims Act claims presentation requirement and that County Code chapter 4.04 does not apply. We therefore reject the county's argument that plaintiffs' class claim was invalid because it did not strictly comply with County Code section 4.04.050.

■ Government Code section 905 requires the presentation of a claim for money or damages against a local public entity, and section 910 states the requirements for such a claim. Absent another statute prescribing procedures to claim a refund of the utility user taxes at issue here (see Gov. Code, § 905, subd. (a)), we conclude that section 910 governs plaintiffs' claim. *San Jose, supra*, 12 Cal.3d at page 457, held that "claimant" in section 910 means the class itself, that an individual claim need not be filed for each member of the purported class, and that the claim must provide the name, address, and other specified information concerning the representative plaintiff and sufficient information to identify and make ascertainable the class. *San Jose* stated that the sufficiency of the information provided must be measured by the substantial compliance test. (*San Jose, supra*, 12 Cal.3d at p. 457.) The county does not contend and has not shown that plaintiffs' claim failed to satisfy these requirements and therefore has not shown error.

In our view, *Woosley, supra*, 3 Cal.4th 758, simply is not on point. *Woosley* held that article XIII, section 32 of the California Constitution compels the conclusion that tax refund claims must strictly comply with statutes enacted by the Legislature specifically governing tax refunds. The parties have identified and we are aware of no statute specifically governing the claims for refund of the utility user taxes at issue here. The outcome in this case is therefore controlled by the principles set forth in *San Jose, supra*, 12 Cal.3d 447.

---

[11] The county's argument also depends on the mischaracterization of the county board of supervisors as the "Legislature" referenced in article XIII, section 32 of the California Constitution. Section 32 applies only to an action against the state, as we have stated. Moreover, the term "Legislature" as used in the California Constitution means the state Senate and Assembly (see Cal. Const., art. IV, § 1 et seq.), and not the county board of supervisors.

[12] Plaintiffs' argument also depends on the mischaracterization of the county's claims ordinance as a "statute" within the meaning of Government Code section 905, subdivision (a).

## DISPOSITION

The county's petition in these consolidated proceedings is denied. Each party shall bear its own costs incurred in these appellate proceedings.

Klein, P. J., and Aldrich, J., concurred.

A petition for rehearing was denied February 22, 2008 and petitioner's petition for review by the Supreme Court was denied April 30, 2008, S161501.