[No. A092504. First Dist., Div. Two. Nov. 20, 2001.]

FLYING DUTCHMAN PARK, INC., Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

1130

COUNSEL

Law Offices of J. Brian McCauley and J. Brian McCauley for Plaintiff and Appellant.

Louise H. Renne, City Attorney, Ellen Forman, Chief City Attorney, Joseph M. Quinn and Andrew Y.S. Cheng, Deputy City Attorneys, for Defendant and Respondent.

James K. Hahn, City Attorney, Pedro B. Echeverria, Chief Assistant City Attorney, Ronald Tuller, Assistant City Attorney, and Judith E. Reel, Deputy

City Attorney, for the City of Los Angeles and 52 other California Cities, and the California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**RUVOLO, J.—**

I.

INTRODUCTION

The taxpayer, Flying Dutchman Park, Inc. (Flying Dutchman), brought an action for injunctive, mandatory, and declaratory relief against the City and County of San Francisco (San Francisco) and local tax officials challenging the imposition of a parking tax on constitutional as well as other grounds. The trial court dismissed Flying Dutchman's lawsuit after sustaining a demurrer without leave to amend, because Flying Dutchman failed to pay the disputed tax before filing its action. We affirm, holding that Flying Dutchman's challenge to San Francisco's tax is subject to the "pay first, litigate later" rule. This well-recognized principle of tax law requires Flying Dutchman to pay the disputed tax first, and then sue for a refund, rather than being permitted to delay payment while the validity of the tax assessment is litigated.

II.

FACTS AND PROCEDURAL HISTORY

■    In reciting the facts, we are guided by well-settled principles governing appellate review after the sustaining of a demurrer without leave to amend. " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.]." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; see also *Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 159 [17 Cal.Rptr.2d 639].)

Flying Dutchman conducts parking operations, both valet services and parking at fixed locations, within San Francisco. In September 1998, the San Francisco Tax Collector (Tax Collector) advised Flying Dutchman that a $652,039.10 parking tax deficiency was assessed against it for the period beginning January 1, 1994, and ending March 31, 1997. The parking tax is

defined as a tax on "the rent of every occupancy of parking space in a parking station in the City and County." (S.F. Mun. Code, § 602.)[1] In practical application, the parking tax imposes a tax on a person who either occupies or has a right or license to occupy certain real property—a parking space. This is a possessory interest, which is taxable as real property under Revenue and Taxation Code section 107.

Pursuant to sections 6.13-1 through 6.13-2 and former section 612, Flying Dutchman timely petitioned the Tax Collector for redetermination of the parking tax allegedly owed. During early March 1999, Flying Dutchman participated in an informal hearing before the Tax Collector to challenge the taxes allegedly owed.

On July 26, 1999, the Tax Collector advised Flying Dutchman that its petition for redetermination was denied, and that the tax deficiency was now in the amount of $697,223.88, which included interest and penalties accrued through July 31, 1999. Flying Dutchman then appealed the Tax Collector's determination of taxes to the Business Tax Board of Review (Board of Review). (§§ 6.14-1 through 6.14-2, former 612, subd. (d).) By filing this appeal, Flying Dutchman preserved its right to seek judicial relief. Section 6.14-2 states in relevant part: "Persons claiming they are aggrieved under [these taxing provisions] must exhaust their administrative remedies by completing an appeal to the Board of Review prior to seeking judicial relief. . . ." The Board of Review issued its findings on or about February 1, 2000, denying Flying Dutchman's request that it reduce or eliminate the parking tax deficiency. The Board of Review's ruling became final 15 days after the ruling was issued, and pursuant to section 6.14-2, at that point in time, the assessed tax *"shall thereupon become due and payable,* subject to interest and penalties, and enforceable by the Tax Collector in like manner as an order or decision of the Tax Collector. . . ." (Italics added.)

On April 7, 2000, Flying Dutchman filed a petition for mandamus, injunctive and declaratory relief in San Francisco Superior Court. As in the administrative proceedings, Flying Dutchman's superior court action included both constitutional claims as well as claims that the parking tax had been improperly calculated. Primarily, the complaint alleged that the parking tax, as interpreted and imposed, amounted to an impermissible double real property tax. Flying Dutchman also contended that the parking tax, as applied and interpreted by the Tax Collector, violated the equal protection clauses of the state and federal Constitutions.

---

[1]Included in the record on appeal are excerpts from the version of the San Francisco Municipal Code that was in effect at the time of the events in question. All undesignated section references in this opinion are from these excerpts.

However, it is undisputed that Flying Dutchman failed to precede its lawsuit by prepaying the tax that had "become due and payable" 15 days after the Board of Review's final ruling. (§ 6.14-2.) San Francisco demurred to Flying Dutchman's complaint on the ground that well-established law provided that Flying Dutchman's sole and exclusive remedy for contesting the parking tax assessment was to pay the tax, file a claim for refund, and upon denial, then commence a suit for refund.

On August 4, 2000, the trial court sustained San Francisco's demurrer without leave to amend. The court's written order states: "[T]he Court finds that each and every one of the purported causes of action pleaded in the Petition/Complaint fails to state a valid cause of action . . . because Petitioner/Complainant's sole means of contesting the disputed taxes is to pay the tax, file an administrative claim for refund, and, if denied, sue for refund of the taxes paid. Petitioner/Complainant has not paid the taxes in dispute, and may not, therefore, maintain the causes of action asserted in the Petition/Complaint . . . . The payment followed by suit for refund procedure has been held to be a 'plain, speedy and adequate remedy in the ordinary course of law' that precludes resort to mandamus, injunctive and declaratory relief in tax matters." After Flying Dutchman's petition was dismissed with prejudice and judgment was entered for San Francisco, this appeal followed.

III.

DISCUSSION

A.  *Standard of Review—Demurrer.*

■ "A demurrer tests the legal sufficiency of the complaint . . . ." (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497 [57 Cal.Rptr.2d 406]; *Sargoy v. Resolution Trust Corp.* (1992) 8 Cal.App.4th 1039, 1041 [10 Cal.Rptr.2d 889].) On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479, 16 A.L.R.5th 903]; *Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115 [55 Cal.Rptr.2d 276].) When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment. If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so. The plaintiff bears the burden of demonstrating a

reasonable possibility to cure any defect by amendment. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1]; *Blank v. Kirwan, supra,* 39 Cal.3d at p. 318; *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187 [45 Cal.Rptr.2d 82].)

**B.** *Is Flying Dutchman Entitled to a Prepayment Determination of the Parking Tax's Validity?*

It is undisputed that Flying Dutchman has not paid any of the taxes at issue, and through this proceeding seeks to avoid the collection of the tax deficiency determined to be due and owing while the validity of the tax is being litigated. San Francisco claims that Flying Dutchman, like all other taxpayers, should be required to abide by the "pay first, litigate later" rule. (See *Allen v. Regents* (1938) 304 U.S. 439, 456 [58 S.Ct. 980, 988, 82 L.Ed. 1448].) Simply put, San Francisco claims that as a condition precedent to challenging the tax assessment in court, Flying Dutchman must first pay the tax.[2]

California courts have repeatedly denied mandamus, injunctive and declaratory relief where a taxpayer has failed to pay an assessed tax before filing a refund action. (*Connolly v. County of Orange* (1992) 1 Cal.4th 1105, 1113-1114 [4 Cal.Rptr.2d 857, 824 P.2d 663]; *State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633 [217 Cal.Rptr. 238, 703 P.2d 1131] (*State Bd. of Equalization*).) It has recently been acknowledged that " '[t]he power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned. [Citation.]' " (*Writers Guild of America, West, Inc. v. City of Los Angeles* (2000) 77 Cal.App.4th 475, 481 [91 Cal.Rptr.2d 603] (*Writers Guild*), quoting *Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 725-726 [192 P.2d 916]; see also *Aronoff v. Franchise Tax Board* (1963) 60 Cal.2d 177, 179 [32 Cal.Rptr. 1, 383 P.2d 409].) Our Supreme Court has explicitly held that "the sole legal avenue for resolving tax disputes is a postpayment refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid." (*State Bd. of Equalization, supra,* 39 Cal.3d at p. 638.)

In explaining the rationale behind the rule, many judicial opinions have stressed the importance of restraining courts from unduly interfering with the flow of tax dollars that fund government operations, thereby preventing the disruption of essential public services. (See, e.g., *National Private Truck*

---

[2]San Francisco's position in this litigation has received the support of the City of Los Angeles and 52 other California cities, and the California State Association of Counties, which were granted permission on May 24, 2001, to file an amicus curiae brief in this appeal.

*Council, Inc. v. Oklahoma Tax Comm'n* (1995) 515 U.S. 582, 586 [115 S.Ct. 2351, 2354, 132 L.Ed.2d 509] [" 'It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible.' . . ." (quoting *Dows v. City of Chicago* (1870) 78 U.S. 108, 110 [20 L.Ed. 65, 66])]; *State Bd. of Equalization, supra,* 39 Cal.3d at p. 639 [" ' "The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every taxpayer is entitled to the delays of litigation is unreason[able]." ' "]; *Allen v. Regents, supra,* 304 U.S. at p. 456 [58 S.Ct. at p. 988] ["Any departure from the principle of 'pay first and litigate later' threatens an essential safeguard to the orderly functioning of government."].)

Article XIII, section 32 of the California Constitution restricts a taxpayer's remedy to a postpayment refund action. This constitutional provision provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." The Legislature implemented this constitutional provision by enacting Revenue and Taxation Code section 6931, which states: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this State or against any officer of the State to prevent or enjoin the collection under this part of any tax or any amount of tax required to be collected."

Flying Dutchman claims that the foregoing authorities, by their terms, apply only to state-imposed taxes and that local (county and municipal) taxes, such as the parking tax levied by San Francisco, fall outside the purview of these authorities. (See *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 822, fn. 5 [107 Cal.Rptr.2d 369, 23 P.3d 601].) Until recently, no law existed on precisely this question. However, this argument was recently addressed and rejected in *Writers Guild, supra,* 77 Cal.App.4th 475. As the *Writers Guild* decision is pivotal to the resolution of this appeal, we consider it at some length.

In *Writers Guild,* an association of writers sued for equitable relief prior to paying amounts due under the Los Angeles business tax ordinance, a locally imposed tax contained in the Los Angeles Municipal Code. The plaintiffs claimed the imposition of the tax violated their constitutional rights. Los

Angeles demurred to the complaint on the same ground advanced by San Francisco herein, namely, that because the plaintiffs had not paid the tax and brought an action for tax refund, they could not obtain the injunctive and declaratory relief they sought. The appellate court in *Writers Guild* agreed and held that the plaintiffs were not entitled to injunctive or declaratory relief because constitutional and statutory objections to the tax could be raised in a suit for refund, which was an adequate legal remedy. Citing a multitude of authorities, the court held that no injunction, writ of mandate or other equitable process could be issued against the locality to prevent or enjoin the collection of the tax because upon payment of the tax, the plaintiffs could maintain a lawsuit to recover it. (*Writers Guild, supra,* 77 Cal.App.4th at p. 483.) In short, the plaintiffs were relegated to the remedy of a postpayment refund action.

In so holding, the court expressly rejected the argument Flying Dutchman makes herein, that the "pay first, litigate later" rule applies only to state-imposed taxes. The court in *Writers Guild* reasoned: "In light of the strong declaration of public policy against enjoining the collection of taxes . . . , we conclude that plaintiffs are not permitted to assert [their claims] in the manner they seek to do. We recognize that [the cited] cases deal with the collection of state taxes and here we deal with a city tax. . . . Yet, we see no reason why we should not follow the public policy set forth in *Pacific Gas & Electric* [*Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277 [165 Cal.Rptr. 122, 611 P.2d 463]] [articulating a general policy that any delay in the collection of taxes will cause a serious detriment to the public]." (*Writers Guild, supra,* 77 Cal.App.4th at p. 483.)

Flying Dutchman urges us not to follow the *Writers Guild* decision, claiming it was poorly reasoned and improperly decided. However, we see no need to reexamine the issues resolved in *Writers Guild,* particularly its holding that the prepayment requirement for obtaining judicial review applies equally to local taxes as well as state taxes. Because the wisdom of preventing the judiciary from interfering with tax schemes pertains as strongly to local taxes as it does to state taxes, we would be hard pressed to endorse the distinction Flying Dutchman attempts to make based on the identity of the taxing entity.

Flying Dutchman attempts to distinguish *Writers Guild* because that opinion concerned only a request for injunctive relief. Thus, Flying Dutchman argues the decision is inapt here because it fails to explain why the court's equity jurisdiction could not be invoked by the plaintiffs to award declaratory relief; the relief it now seeks. We disagree. It has been recognized that

declaratory relief "may in every practical sense operate to suspend collection of the state taxes until the litigation is ended" in the very same manner that an injunction would. (*Great Lakes Co. v. Huffman* (1943) 319 U.S. 293, 299 [63 S.Ct. 1070, 1073, 87 L.Ed. 1407].) Thus, *Writers Guild*'s rationale for barring injunctive relief applies equally to declaratory relief.

Finally, we agree with the result reached in *Writers Guild*, barring a suit for injunctive and declaratory relief before payment of the challenged local assessment. The court's resolution of the tax dispute profiled in *Writers Guild* evolves naturally from the well-established principle that courts should refrain from interposing equitable relief in cases involving the collection of taxes unless there is clear proof that there is no adequate remedy at law.

The rule in this state is that injunctive and declaratory relief will not be granted where there is a plain, complete, speedy, and adequate remedy at law. (See 11 Witkin, Summary of Cal. Law (2001 supp.) Equity, § 3, p. 392.) Like the plaintiffs in *Writers Guild*, Flying Dutchman has not made a showing that it lacks an adequate remedy at law. Any remedy that allows a taxpayer to challenge a tax already collected, and to press any constitutional claims he or she may have, has been found to constitute " 'a plain, speedy and efficient remedy' " barring equitable relief. (See, e.g., *Rosewell v. La-Salle National Bank* (1981) 450 U.S. 503, 514 [101 S.Ct. 1221, 1230, 67 L.Ed.2d 464]; *County of Sacramento v. Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 672 [108 Cal.Rptr. 434] [procedure "allowing the taxpayer to pay the disputed tax under protest and to sue for refund" is an adequate legal remedy barring equitable relief].)

It is manifest that San Francisco's municipal code affords an adequate legal remedy to taxpayers seeking a refund for taxes alleged to have been illegally collected. Former section 6.15-1, subdivision (a) provided, in pertinent part: "Whenever the amount of any tax, interest or penalty . . . has been erroneously or illegally collected or received by the City and County . . . , that amount may be refunded, provided a verified claim in writing therefor, stating under penalty of perjury the specific grounds upon which the claim was founded, is filed with the Tax Collector within three years of the day of payment. *Any claim for refund of taxes paid based on a violation of the United States or California Constitutions or a violation of a United States or California statute must be made within 90 days of the payment of the taxes for which the refund is claimed and must state the grounds on which the claim is based.*" (Italics added.) The scheme at issue then provides the legal remedy of a refund suit; and if the taxpayer is successful in obtaining "a final

judicial determination of the invalidity of any portion of [the parking tax] or the invalidity of any administrative interpretation thereof . . . interest shall be computed from the date of the claim for refund to the date of refund."

Consequently, Flying Dutchman did not lack a remedy at law at the time it commenced this suit for declaratory and injunctive relief. To the contrary, because the various municipal code provisions supply an administrative remedy as well as the right to a judicial challenge, Flying Dutchman can pay the tax in dispute and challenge the accuracy and legal validity of their tax obligation. Flying Dutchman can then raise all of the issues and make all the arguments it seeks to make in this appeal challenging the constitutional validity of the parking tax assessment.

Flying Dutchman next claims that a single provision of the municipal code should be interpreted to provide taxpayers with the option of withholding payment and obtaining a predeprivation judicial determination of the tax assessment's validity. Former section 6.19-6 provided: "Any action challenging the validity of a tax imposed under Part III of the Municipal Code [the parking tax], as opposed to the application of that tax to a particular person, shall be commenced within 90 days after the delinquency date for payment of the tax. . . ."

As interpreted by Flying Dutchman, this section "contemplates judicial review for nonpayment situations, and purports to set up a statute of limitation uniquely for judicial review of nonpayment situations." San Francisco provides an alternative interpretation, claiming that section 6.19-6 "simply states that a facial challenge is timely if filed within 90 days of the date the tax is due—regardless of the date that the tax is actually paid." We agree with the interpretation urged by San Francisco because we can think of no reason that the drafters of the municipal code would give San Francisco taxpayers the option of paying or not paying the disputed taxes prior to bringing suit. To hold otherwise, which would in effect prevent the collection of taxes while the parties sorted through their respective legal rights, would bring about a result the other provisions of the municipal code are clearly designed to prevent. The overall meaning of the municipal code is unmistakably clear. The sole legal avenue for resolving a tax dispute is a postpayment refund action, i.e., a taxpayer may not go to court and obtain adjudication of the validity of a tax that is due but not yet paid.

Flying Dutchman next argues that its case presents "rare and exceptional circumstances," thus falling within an exception to the general rule requiring a taxpayer to pay delinquent taxes before seeking judicial intervention

challenging the tax. (See, e.g., *Western Oil & Gas Assn. v. State Bd. of Equalization* (1987) 44 Cal.3d 208, 213-214 [242 Cal.Rptr. 334, 745 P.2d 1360].) For instance, in *Bueneman v. City of Santa Barbara* (1937) 8 Cal.2d 405 [65 P.2d 884, 109 A.L.R. 895], Santa Barbara enacted a license fee on laundries that picked up and delivered laundry in Santa Barbara but which performed the laundering outside of the city. Santa Barbara authorities had arrested the plaintiffs' employees for violating the ordinance and continued to threaten further arrests. Under these circumstances, the court found that "a court of equity will entertain the suit." (*Id.* at p. 408.) This case is different. At no time since Flying Dutchman filed its action has any of its agents or employees been subject to criminal prosecution under the parking tax. We take judicial notice that as of January 16, 1998, the San Francisco Board of Supervisors repealed the penal sanctions connected with the parking tax.

Similarly, both *John Tennant Memorial Homes, Inc. v. City of Pacific Grove* (1972) 27 Cal.App.3d 372 [103 Cal.Rptr. 215] and *Gowens v. City of Bakersfield* (1960) 179 Cal.App.2d 282 [3 Cal.Rptr. 746] involved questions of a taxpayer's standing to challenge a newly enacted tax ordinance. The court found that the taxpayers had standing although they had not paid the tax because the ordinances provided for criminal penalties and the taxpayers had challenged the tax before the first payments were due. (*John Tennant, supra,* 27 Cal.App.3d at pp. 378-379; *Gowens, supra,* 179 Cal.App.2d at pp. 283-285.) The same cannot be said here.

At oral argument, Flying Dutchman also relied upon *Brown v. County of Los Angeles* (1999) 72 Cal.App.4th 665 [85 Cal.Rptr.2d 414], to support its position that it is entitled to seek prepayment declaratory relief in this action. The court in *Brown* examined a locally imposed documentary transfer tax based upon Los Angeles County's policy of "comput[ing] the transfer tax based upon *either* the actual purchase price or the amount of the unpaid debt, whichever is *greater*." (*Id.* at p. 668, original italics.) In allowing the challenge to go forward, the court noted that its decision did not improperly prevent or enjoin a tax in violation of California Constitution, article XIII, section 32, which, by its terms, applies only to actions against the State of California, not those involving assessments by local governments. (*Brown, supra,* 72 Cal.App.4th at p. 670.) Moreover, the court explained that without a declaratory judgment, the county could continue to overcharge the taxpayer, who frequently purchased property at trustee sales. (*Ibid.*) Importantly, Flying Dutchman omitted to mention in its argument that *before* mounting her challenge to the documentary transfer tax, the taxpayer in *Brown paid the taxes assessed against her in full,* and then filed claims for refunds. (*Id.* at p. 667.) The taxpayer's full payment of the disputed taxes,

prior to her request for declaratory relief, stands in marked contrast to this case, in which Flying Dutchman has not paid *any* of the taxes in dispute. (Accord, *Howard Jarvis Taxpayers Assn. v. City of La Habra, supra*, 25 Cal.4th at pp. 819-822 [taxpayer is not limited to seeking refund after paying disputed tax, but is allowed to seek equitable remedies and writ relief to prevent further illegal tax collection].)

■ Finally, Flying Dutchman claims that it should not have to exhaust administrative remedies because the parking tax at issue violated the Constitution, and hence was a "nullity." It has long been established that suits to enjoin the collection of taxes may not be maintained even though the imposition of the tax may be "illegal and void," unless grounds are presented "justifying the interposition of a court of equity to enjoin its collection." (*Dows v. City of Chicago, supra*, 78 U.S. at p. 109 [20 L.Ed at p. 66]; see also *Crocker v. Scott* (1906) 149 Cal. 575, 594 [87 P. 102] ["the equitable remedy by injunction will not be granted to restrain . . . enforcing the tax laws, merely because the tax sought to be enforced is illegal."].) Equity jurisdiction, as the Supreme Court explained in *Dows*, will lie to restrain collection of taxes only where the taxpayer "has no adequate remedy by the ordinary processes of the law," and "[i]t must appear that the enforcement of the tax would . . . produce irreparable injury . . . ." (*Dows, supra*, 78 U.S. at p. 110 [20 L.Ed at p. 66].) In this regard, our case is analogous to *Writers Guild, supra*, 77 Cal.App.4th at page 483, where the court barred the taxpayers' prepayment lawsuit seeking equitable relief where the constitutional challenges taxpayers sought to raise in the lawsuit could be raised in the refund action. In sum, Flying Dutchman has failed to establish an arguable basis for the court to exercise its equitable powers. (See also *Bob Jones University v. Simon* (1974) 416 U.S. 725, 746-747 [94 S.Ct. 2038, 2050-2051, 40 L.Ed.2d 496].)

IV.

DISPOSITION

The judgment is affirmed.

Haerle, Acting P. J., and Lambden, J., concurred.

On December 5, 2001, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 13, 2002.