174 Cal.App.4th 369 (2009)
___ Cal.Rptr.3d ___
ESTUARDO ARDON, Plaintiff and Appellant,
v.
CITY OF LOS ANGELES, Defendant and Respondent.
No B201035.
Court of Appeals of California, Second District, Division Three.
May 28, 2009.
As modified June 16, 2009.
*372 Wolf Haldenstein Adler Freeman & Herz, Francis M. Gregorek, Rachele R. Rickert; Cuneo Gilbert & Laduca, Jon Tostrud; Chimicles & Tikellis and Timothy N. Mathews for Plaintiff and Appellant.
Wolf Haldenstein Adler Freeman & Herz, Francis M. Gregorek, Rachele R. Rickert; Cuneo Gilbert & Laduca, Jon Tostrud; Chimicles & Tikellis and Timothy N. Mathews for Willy Granados and John W. McWilliams as Amici Curiae on behalf of Plaintiff and Appellant.
Patricia Sturdevant; Wilentz, Goldman & Spitzer, Kevin P. Roddy; and Timothy Bittle for NASCAT, Howard Jarvis Taxpayers Association, Consumer Federation of California and Utility Reform Network as Amici Curiae on behalf of Plaintiff and Appellant.
Huskinson, Brown, Heidenreich & Carlin and Paul E. Heidenreich as Amicus Curiae on behalf of Plaintiff and Appellant.
Edward M. Teyssier; and Joseph D. Henchman for the Tax Foundation as Amicus Curiae on behalf of Plaintiff and Appellant.
Rockard J. Delgadillo, City Attorney, Noreen S. Vincent, Assistant City Attorney, Brian I. Cheng, Deputy City Attorney; Orrick Herrington & Sutcliffe, William Molinski, Valerie M. Goo, Frank D. Rorie; Colantuono & Levin, Michael G. Colantuono, Sandra J. Levin and Amy C. Sparrow for Defendant and Respondent.
*373 Dennis J. Herrera, City Attorney (San Francisco), Julie Van Nostern, Chief Tax Attorney, and Peter J. Keith, Deputy City Attorney, for The League of California Cities, The California State Association of Counties, and The California Special Districts Association as Amici Curiae on behalf of Defendant and Respondent.
Raymond G. Fortner, Jr., County Counsel, and Albert Ramseyer, Principal Deputy County Counsel, for the County of Los Angeles as Amicus Curiae on behalf of Defendant and Respondent.

OPINION
KITCHING, J.
Plaintiff and appellant Estuardo Ardon (Ardon) appeals an order striking his class action allegations in an action against the City of Los Angeles (City). Ardon contends the City's telephone users tax (TUT) is an illegal tax. He seeks "on behalf of himself and all others similarly situated" a refund of the TUT. We affirm.
The City and Ardon agree that a prerequisite to pursuing a tax refund action is that the plaintiff must first file a government claim with the City. The primary issue in this appeal is whether Ardon was entitled to present a single claim to the City on behalf of himself and the entire class, or whether each member of the purported class is required to file an individual claim with the City prior to filing suit.
Ardon contends he properly filed a government claim with the City on his own behalf and on behalf of the class he purports to represent. The City contends Ardon is limited to filing an individual claim on his own behalf. We hold that Ardon cannot present a claim on behalf of the entire purported class.
In Woosley v. State of California (1992) 3 Cal.4th 758, 792 [13 Cal.Rptr.2d 30, 838 P.2d 758] (Woosley), our Supreme Court held that article XIII, section 32 of the California Constitution (article XIII, section 32) prohibits the courts from expanding the methods for seeking tax refunds expressly provided by the Legislature. The policy underlying article XIII, section 32 is that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning.
Here, the applicable claims statute is Government Code section 910 (section 910), which does not expressly allow a class action claim. Under Woosley and the policy underlying article XIII, section 32, Ardon cannot assert a class claim under section 910 for a tax refund.

*374 FACTUAL AND PROCEDURAL BACKGROUND

1. Ardon's government claim.

On October 19, 2006, Ardon presented a claim to the City, "on behalf [of] himself and all similarly situated taxpayers in the City of Los Angeles," requesting cessation of the collection of the TUT and the return of monies collected under the tax during the prior two years. Ardon claims that the Los Angeles Municipal Code exempts from the TUT all amounts paid for telephone services to the extent those amounts are exempt from the federal excise tax (FET). Because the FET was allegedly improperly collected, Ardon contends, so too was the TUT.
On December 7, 2006, the city attorney responded to Ardon's claim: "To the extent that the October 19 letter presents a tax refund claim against the City by Mr. Estuardo Ardon, notice is hereby given that the claim is rejected by the City. To the extent that the letter attempts to present a tax refund claim on behalf of a class, that purported claim is denied as well, in part on the basis that there is no legal standing to file a claim on behalf of a class." On December 27, 2006, Ardon filed suit against the City.

2. Ardon's operative pleading.

On March 29, 2007, Ardon, on behalf of himself and all others similarly situated, filed a corrected first amended class action complaint for declaratory, injunctive, monetary and other relief.[1] The complaint set forth counts for declaratory and injunctive relief preventing further improper collection of the TUT (count one),[2] declaratory relief regarding the alleged unconstitutional amendment of the TUT (count two), money had and received (count three), unjust enrichment (count four), violation of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution (count five), and a claim for writ of mandamus (count six). By way of relief, the complaint sought, inter alia, certification of the matter as a class action (Code *375 Civ. Proc., § 382), an accounting by the City of the TUT funds collected, and prompt return of those monies to the members of the class.

3. The City's demurrer and motion to strike.

The City demurred to the entire complaint, asserting, inter alia, there is no authorization for a class action, the California Constitution prohibits courts from enjoining the collection of a tax; and a tax refund is an adequate remedy at law so that an injunction is not available.
The City concurrently filed a motion to strike all class action allegations from the complaint on the ground Ardon was not permitted to file a government claim with the City on behalf of a purported class. The City contended that pursuant to Woosley a class claim for a tax refund is not permitted unless the Legislature has expressly authorized one. Before Ardon could bring a class action lawsuit, the City argued, each member of the purported class was required to have filed a government claim with the City.
The trial court granted the City's motion to strike the class allegations. It also partially overruled and partially sustained the demurrer without leave to amend, and stayed certain causes of action. Ardon filed a timely notice of appeal from the order on the City's motion to strike and demurrer.[3]

CONTENTIONS
Ardon makes two main arguments on appeal. He first argues that he was required to file a claim in the manner set forth in the Government Claims Act, not in the manner set forth in the Los Angeles Municipal Code. Ardon's second argument is that the trial court erred in interpreting Woosley to prohibit a class action in this case. We agree with Ardon's first contention but do not agree with his second.[4]

*376 DISCUSSION

1. Ardon was required to file a claim in the manner set forth in the Government Claims Act prior to pursuing an action for a tax refund against the City.

(1) Under the Government Claims Act, "no suit for `money or damages' may be brought against a public entity until a written claim has been presented to the public entity and the claim either has been acted upon or is deemed to have been rejected. (Gov. Code, §§ 905, 945.4.)"[5] (Hart v. County of Alameda (1999) 76 Cal.App.4th 766, 778 [90 Cal.Rptr.2d 386].) In general, claims for money or damages against a local public entity must be presented in the manner set forth in the Government Claims Act, unless the claim falls within specified exceptions. (See Gov. Code, § 905.) However, if the claim falls into one of the specified exceptions, and the claim is not "governed by any other statutes or regulations expressly relating thereto, [it] shall be governed by the procedure prescribed in any charter, ordinance or regulation adopted by the local public entity." (Gov. Code, § 935, subd. (a).)
The City contends that Ardon must file a claim under Los Angeles Municipal Code section 21.07 (section 21.07) and former section 21.1.12 (section 21.1.12).[6] Ardon, conversely, contends that sections 21.07 and 21.1.12 are preempted by the Government Claims Act. (Compare Batt v. City and County of San Francisco (2007) 155 Cal.App.4th 65, 78-79 [65 Cal.Rptr.3d 716] (Batt) with County of Los Angeles v. Superior Court (2008) 159 Cal.App.4th 353, 360-361 [71 Cal.Rptr.3d 485] (Oronoz).) We need not decide the preemption issue because we hold, for the reasons stated below, that sections 21.07 and 21.1.12 do not apply to the claims asserted by Ardon. Accordingly, Ardon was required to present a claim to the City in the manner set forth in the Government Claims Act.
(2) We interpret sections 21.07 and 21.1.12 de novo (see Bohbot v. Santa Monica Rent Control Bd. (2005) 133 Cal.App.4th 456, 462 [34 Cal.Rptr.3d 827] (Bohbot)) by the same rules applicable to statutes. (See Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd. (1999) 70 Cal.App.4th 281, 290 [82 Cal.Rptr.2d 569]; Bohbot, at p. 462.) Our fundamental task is to ascertain the city council's intent. (See Smith v. Superior Court (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218] (Smith).) The meaning of a provision of a municipal code "`may not be determined from a single word or sentence; the words must be construed in context. . . .'" (People v. Shabazz (2006) 38 Cal.4th 55, 67 [40 Cal.Rptr.3d 750, *377 130 P.3d 519].) Where reasonably possible, we also avoid any construction that renders "particular provisions superfluous or unnecessary" (Dix v. Superior Court (1991) 53 Cal.3d 442, 459 [279 Cal.Rptr. 834, 807 P.2d 1063]) or that would lead to absurd consequences (see Smith, at p. 83).

A. Section 21.07.

Section 21.07 is irrelevant to this case. It governs claims for refund of overpayment of taxes "imposed by Article 1 and 1.5 of Chapter 2 of [the Los Angeles Municipal Code.]" (L.A. Mun. Code, § 21.07.) article 1 pertains to business taxes, and article 1.5, which is suspended, pertains to use taxes. The TUT appears in article 1.1. (L.A. Mun. Code, ch. 2, art. 1.1, § 21.1.3.) Therefore, the claim procedure contained in section 21.07, by its terms, is inapplicable.

B. Section 21.1.12.

Former section 21.1.12 was entitled "Senior Citizen Exemption Refunds." Subdivision (a) of section 21.1.12 provides an exemption from the TUT for any individual 62 years of age or older or any disabled individual who lives in a household with less than a specified combined income.[7] Former subdivision (c) of section 21.1.12, in turn, provided: "[F]or individuals 62 years of age or older, and . . . for disabled individuals, any individual entitled to be exempt from the taxes imposed by this article [TUT] who used telephone, electric or gas services and paid more than $3.00 in such taxes may . . . apply for a refund thereof on forms provided by the Director of Finance." Section 21.1.12, former subdivision (c) further provided: "Except as otherwise provided in this section, refunds of overpaid taxes shall be made in the same manner as is provided in Section 21.07 of this chapter for refunds of overpayments in Business Taxes."
(3) Under the plain language of section 21.1.12, individuals who qualify for the low-income seniors and disabled persons exemption set forth in subdivision (a) may seek a refund of the TUT under former subdivision (c) (now subd. (d)) thereof. Ardon's claim does not implicate section 21.1.12 for two reasons. First, Ardon has not alleged that he, or any member of the class *378 he purports to represent, is 62 years of age or older or is disabled. Second, Ardon's claim of TUT illegality is not within the ambit of the section 21.1.12 refund procedure. Because section 21.1.12 is not implicated, we need not reach the issue of whether section 21.1.12 is preempted by the Government Claims Act.

2. Ardon cannot present a Government Claims Act claim for a tax refund on behalf of a class.

We now turn to the issue of whether Ardon can make a claim on behalf of the class he purports to represent. This presents a question of law, which we review de novo. (Oronoz, supra, 159 Cal.App.4th at p. 359.)
(4) Section 910 provides that a claim is filed by a "claimant."[8] Although no provision in section 910 expressly allows a claimant to assert a claim on behalf of a class, Ardon contends that under City of San Jose v. Superior Court (1974) 12 Cal.3d 447, 457 [115 Cal.Rptr. 797, 525 P.2d 701] (City of San Jose or San Jose), he may file a section 910 claim on behalf of the class he purports to represent. We reject this contention. As we will explain, article XIII, section 32, as interpreted by Woosley prohibits us from expanding the scope of section 910 to allow class claims for tax refunds.
As we will further explain, whether a claimant can file a section 910 claim on behalf of a class depends on whether the claimant is required to comply strictly with the requirements of the statute or whether the claimant can merely substantially comply. If strict compliance is required, the claimant cannot pursue a class claim. On the other hand, if the claimant's substantial compliance can satisfy the statute, he or she can pursue such a claim. We shall conclude that where, as here, the claimant seeks a refund of taxes, strict compliance is required. (See Batt, supra, 155 Cal.App.4th at p. 73 [strict compliance with ordinance in action for refund of local taxes]; IBM Personal Pension Plan v. City and County of San Francisco (2005) 131 Cal.App.4th 1291, 1299 [32 Cal.Rptr.3d 656] [strict compliance with statute in action for refund of property taxes]; Neecke v. City of Mill Valley (1995) 39 Cal.App.4th 946, 961 [46 Cal.Rptr.2d 266] (Neecke) ["a taxpayer must show strict, rather than substantial, compliance with the administrative procedures established by the Legislature"].)

*379 A. Under City of San Jose, a section 910 class claim may be filed in an inverse condemnation or nuisance action.

In earlier cases, the courts held that strict compliance with claims statutes was essential to maintain an action against a governmental entity. (See 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 274, pp. 356-357 (Witkin).) This rule sometimes led to harsh results. (Witkin, § 275, pp. 357-358.) Thus over time the courts allowed substantial compliance with claims statutes. (Witkin, § 275, pp. 358-360.)
(5) In City of San Jose, supra, 12 Cal.3d at pages 456-457, the Supreme Court described the circumstances under which a claim could substantially comply with a claims statute: "[T]o gauge the sufficiency of a particular claim, two tests shall be applied: Is there some compliance with all the statutory requirements; and, if so, is this compliance sufficient to constitute substantial compliance?" A claim substantially complies with a claims statute if there is sufficient information "to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." (Id. at p. 456.)
In City of San Jose, the plaintiff sought damages against a city under nuisance and inverse condemnation theories of recovery. The issue was whether the plaintiff could file a section 910 claim on behalf of a class. Applying the substantial compliance test, the court concluded that the term "`claimant,' as used in section 910, must be equated with the class itself. . .," and thus rejected "the suggested necessity for filing an individual claim for each member of the purported class." (City of San Jose, supra, 12 Cal.3d at p. 457.) The court further reasoned: "To require such detailed information in advance of the complaint would severely restrict the maintenance of appropriate class actionscontrary to recognized policy favoring them. (Code Civ. Proc., § 382 . . . .)" (City of San Jose, at p. 457, italics added.) The court thus held that "claims statutes," including section 910, "do not prohibit class actions against governmental entities for inverse condemnation and nuisance." (City of San Jose, at p. 457, italics added.)

B. Woosley rejected the extension of the City of San Jose case to tax refund claims.

Several Court of Appeal decisions "extended" the holding of City of San Jose to permit the filing of class claims seeking tax refunds. (Woosley, supra, 3 Cal.4th at p. 788, citing Schoderbek v. Carlson (1980) 113 Cal.App.3d 1029 [170 Cal.Rptr. 400] (Schoderbek), Lattin v. Franchise Tax Board (1977) 75 Cal.App.3d 377 [142 Cal.Rptr. 130] (Lattin), and Santa Barbara Optical Co. v. State Bd. of Equalization (1975) 47 Cal.App.3d 244 [120 Cal.Rptr. 609] *380 (Santa Barbara Optical).) In Santa Barbara Optical, the court held that the plaintiffs could file a claim with the State Board of Equalization for a refund of sales taxes on behalf of a class. (Santa Barbara Optical, at pp. 247-248.) In Lattin, the court held that the plaintiffs could file a claim with the Franchise Tax Board for a refund of state income taxes on behalf of a class. (Lattin, at p. 381.) Both Santa Barbara Optical and Lattin relied on City of San Jose. (Santa Barbara Optical at pp. 247-249; Lattin, at pp. 380-381.)[9]
In Schoderbek, the plaintiffs brought a class action for a refund of local property taxes and other relief against county officials and others. Revenue and Taxation Code section 5142 provided that a suit for a property tax refund could not be brought unless a claim for a refund had been filed. The plaintiffs argued that they should be excused from filing any refund claim because they represented approximately 138,000 homeowners and it would be an undue burden to require so many homeowners "to go through the expense of pursuing their administrative remedies." (Schoderbek, supra, 113 Cal.App.3d at p. 1033.) The court, however, cited City of San Jose and stated: "Plaintiffs' argument overlooks the simple fact that they could have filed a claim for the refund with the county on behalf of themselves and on behalf of the members of the class they represent." (Schoderbek, at p. 1033.)
Ardon argues that we should apply City of San Jose to his claim against the City for a refund of the TUT he and members of his purported class paid. In Woosley, however, our Supreme Court rejected the extension of City of San Jose to tax refund claims. The court stated: "Contrary to the line of Court of Appeal decisions cited above [i.e., Schoderbek, Lattin, and Santa Barbara Optical], we conclude, for the reasons that follow, that the holding in City of San Jose . . . should not be extended to include claims for tax refunds." (Woosley, supra, 3 Cal.4th at p. 789.)

C. The underlying policy of article XIII, section 32.

(6) In the following paragraph, the Woosley court explained why it would not extend the holding of City of San Jose to tax refund claims: "The California Constitution expressly provides that actions for tax refunds must be brought in the manner prescribed by the Legislature. Article XIII, section 32, of the California Constitution provides in this regard: `After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, *381 with interest, in such manner as may be provided by the Legislature.' (Italics added.) This constitutional limitation rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues." (Woosley, supra, 3 Cal.4th at p. 789, citing State Bd. of Equalization v. Superior Court (1985) 39 Cal.3d 633, 638 [217 Cal.Rptr. 238, 703 P.2d 1131].)
Woosley follows a line of Supreme Court cases that broadly construed article XIII, section 32 in light of the paramount policy underlying that provision. (See State Bd. of Equalization v. Superior Court, supra, 39 Cal.3d at p. 639; Pacific Gas & Electric Co. v. State Bd. of Equalization (1980) 27 Cal.3d 277, 283 [165 Cal.Rptr. 122, 611 P.2d 463] (Pacific Gas & Electric); Modern Barber Col. v. Cal. Emp. Stab. Com. (1948) 31 Cal.2d 720, 731-732 [192 P.2d 916].) These cases emphasized that article XIII, section 32 serves the important purpose of prohibiting an unplanned disruption of revenue collection, "`so that essential public services dependent on the funds are not unnecessarily interrupted.'" (State Bd. of Equalization v. Superior Court, at p. 638, quoting Pacific Gas & Electric, at p. 283; see also Modern Barber Col. v. Cal. Emp. Stab. Com., at pp. 731-732.)
This policy is especially important where, as here, a plaintiff seeks to assert a class action on behalf of very large numbers of people, and the governmental entity faces an unexpected and huge liability. It is vital that the Legislature retain control over the manner in which claims may be asserted, so that governmental entities have sufficient notice of claims to allow for predictable and reliable fiscal planning.

D. Under Woosley, Ardon can only file an individual claim, not a claim on behalf of a class.

In Woosley, the plaintiff sought to assert a claim for a refund of vehicle license fees and use taxes on behalf of a class. In light of article XIII, section 32 and its underlying policy, the court stated: "[W]e hold that the class claim filed in the present case was not authorized by the statutes governing claims for refunds of vehicle license fees and use taxes. Accordingly, that claim is valid only as to Woosley in his individual capacity, and the class in the present class action properly may include only persons who timely filed valid claims for refunds." (Woosley, supra, 3 Cal.4th at p. 788.)
In reaching its decision, the court required the plaintiff to strictly comply with the applicable claims statute. (See Woosley, supra, 3 Cal.4th at pp. 789-790.) Vehicle Code section 42231 provided that a claim for a refund of vehicle license fees could be filed by "the person who has paid the *382 erroneous or excessive fee or penalty, or his agent on his behalf." The court held: "Within the context of this statute, the term `person' does not include a class, and a class representative who files a claim on behalf of all others similarly situated, without the knowledge or consent of such other persons, is not the agent of the members of the class. [Citations.] Accordingly, a class claim for refunds of vehicle license fees, such as the one here at issue, is not authorized by statute." (Woosley, at p. 790, fn. omitted.)
(7) The court concluded: "In sum, article XIII, section 32, of the California Constitution precludes this court from expanding the methods for seeking tax refunds expressly provided by the Legislature." (Woosley, supra, 3 Cal.4th at p. 792.) It also overruled Schoderbek, Lattin, and Santa Barbara Optical to the extent they expressed views to the contrary. (Woosley, at p. 792.)
(8) Under Woosley, Ardon cannot file a section 910 claim for tax refunds on behalf of a class. The language of section 910 is similar to the language of Vehicle Code section 42231: a claim must be filed by "the claimant or by a person acting on his or her behalf." (§ 910.) When strictly, rather than substantially construed, the syntax and diction of section 910 indicate that it applies to individual claims, not to claims on behalf of a class. For example, section 910 provides that the claim must state the "name and post office address of the claimant." (§ 910, subd. (a).) This language implies that the claim is being asserted by an individual, not a class. Likewise, section 910 provides that a claim must state the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted." (§ 910, subd. (c).) This language does not contemplate different occurrences or transactions related to various members of a class asserting a collective claim. Indeed, no mention is made of a claim filed on behalf of a class.
By contrast, when the Legislature wanted to authorize class claims for refunds of particular state taxes, it used very different language. In two statutes, the Legislature has expressly allowed class claims, albeit with stringent restrictions.[10] Revenue and Taxation Code section 6904, subdivision (b) and section 19322 both provide for "[a] claim filed for or on behalf of a class of taxpayers . . . ."
(9) The absence of express language in section 910 regarding claims on behalf of a class indicates that the Legislature did not intend to allow such claims for tax refunds. "Where statutes involving similar issues contain *383 language demonstrating the Legislature knows how to express its intent, `"the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes."'" (County of San Diego v. San Diego NORML (2008) 165 Cal.App.4th 798, 825 [81 Cal.Rptr.3d 461].)
(10) Under Woosley, a section 910 claim for a tax refund cannot be pursued in a manner not expressly provided by the Legislature. Ardon therefore cannot present a section 910 claim on behalf of the class he purports to represent.

E. Oronoz was incorrectly decided.

In Oronoz, this court held that under City of San Jose, a section 910 claim for a refund of local taxes could be asserted on behalf of a class. (Oronoz, supra, 159 Cal.App.4th at p. 367.) We overrule that aspect of Oronoz in this case.
We stated in Oronoz: "Woosley did not disapprove San Jose or suggest that its holding with respect to claims under Government Code section 910 should be limited, but refused to extend the holding in San Jose to tax refund claims governed by other statutes." (Oronoz, supra, 159 Cal.App.4th at p. 365, italics added.) That is incorrect. Woosley did not limit the holding of City of San Jose to tax refund claims "governed by other statutes." Rather, Woosley stated that the holding of City of San Jose should not be extended to include "claims for tax refunds," period. (Woosley, supra, 3 Cal.4th at p. 789.)
Further, the holding of Woosley, by its plain terms, applies to section 910 claims for tax refunds filed on behalf of a class. Woosley stated that "City of San Jose held that a class claim could be filed pursuant to Government Code section 910 . . . ." (Woosley, supra, 3 Cal.4th at p. 788.) Woosley concluded that this holding regarding section 910 claims "should not be extended to include claims for tax refunds." (Woosley, at p. 789.) Thus a section 910 claim for a tax refund on behalf of a class is precisely the type of claim that is prohibited by the plain language of Woosley.
Moreover, as noted above, for purposes of determining whether a claimant can assert a claim on behalf of a class, there is no material difference between the language of section 910 and the statutes interpreted by Woosley. (Compare § 910 ["A claim shall be presented by the claimant or by a person acting on his or her behalf . . . ."] with Veh. Code, § 42231 ["the person who has paid the erroneous or excessive fee or penalty, or his agent on his behalf, may apply for and receive a refund . . ."].) Thus, contrary to Oronoz, the Woosley decision did not decline to extend the holding of City of San Jose based on *384 any purported difference between section 910 and the claims statutes at issue in Woosley. Woosley instead turned on the nature of the claims asserteda claim for a tax refund must be treated differently than a claim for inverse condemnation and nuisance. (See Woosley, supra, 3 Cal.4th at pp. 788-792.) This is because article XIII, section 32 and its underlying policy require different treatment.
In City of San Jose, the court did not consider article XIII, section 32 or its underlying policy. Rather, the court relied upon the policy in favor of class actions, as expressed by statute (i.e., Code Civ. Proc., § 382). (City of San Jose, supra, 12 Cal.3d at p. 457.) But as Woosley recognized, claims for tax refunds are different. The constitutionally mandated strict legislative control over how to obtain tax refunds outweighs the statutory policy in favor of class actions. (See Woosley, supra, 3 Cal.4th at p. 789.) Accordingly, Ardon's section 910 claim for tax refunds must receive a different treatment from the section 910 claim for damages asserted by the plaintiff in City of San Jose.
Ardon argues that Woosley does not control in this case because its holding relied on article XIII, section 32, a provision which Ardon contends applies to state, not local taxes. In Oronoz, we agreed with this argument. (See Oronoz, supra, 159 Cal.App.4th at p. 363, fn. 6, citing Eisley v. Mohan (1948) 31 Cal.2d 637, 641 [192 P.2d 5] and Pacific Gas & Electric, supra, 27 Cal.3d at p. 281, fn. 6.)
Oronoz, however, interpreted Woosley too narrowly. The reasoning of Woosley applies with equal force to claims for refunds of local taxes. The holding of Woosley was based on the premise that strict legislative control over tax refunds was necessary so that governmental entities could engage in fiscal planning. (Woosely, supra, 3 Cal.4th at p. 789.) Local public entities, like the state, have an overriding interest in fiscal planning based on expected tax revenues.
We therefore join a line of Court of Appeal cases which has applied the policy underlying article XIII, section 32 to local taxes. In Neecke, the court held that under Woosley, the plaintiff was prohibited from pursuing a class claim for a property tax refund. In reaching its decision, the Neecke court stated: "Nothing in the language of Woosley indicates an intent to limit that case's holding to claims statutes addressed to state, as opposed to local, taxes; indeed, that part of the court's opinion dealing with the class claim issue twice uses the term `governmental entities.' (Woosley, supra, 3 Cal.4th at pp. 788, 789.)" (Neecke, supra, 39 Cal.App.4th at p. 962.) We agree with this analysis. The phrase "governmental entities" is broad and plural, and thus does not appear to be limited to the state alone.
*385 The Neecke court also correctly observed: "[T]he Woosley court expressly overruled Schoderbek v. Carlson, supra, 113 Cal.App.3d 1029, to the extent that it was inconsistent with Woosley. Relying upon City of San Jose v. Superior Court, supra, 12 Cal.3d 447, Schoderbek held, in the context of whether administrative remedies had been exhausted, that Revenue and Taxation Code sections 5097 and 5140 permit class claims and class actions for refunds of local property taxes. . . . There was simply no reason for the Supreme Court to disapprove of Schoderbek unless the court intended its Woosley holding to apply to local, as well as state, taxes." (Neecke, supra, 39 Cal.App.4th at pp. 962-963.)
In Batt, the court held that under Woosley, the plaintiff could not assert a claim for a refund of a city hotel tax on behalf of a class. The plaintiff argued, as Ardon does here, that Woosley was not controlling and should be "`narrowly applied.'" (Batt, supra, 155 Cal.App.4th at p. 76.) The Batt court, however, rejected this argument, and stated: "It may be true, as plaintiff asserts, that Woosley does not `categorically' forbid class actions in tax refund cases. But it did in effect preclude refund class actions except where the antecedent administrative claim on behalf of the putative class is expressly authorized by statute. (See Woosley, supra, 3 Cal.4th 758, 788-792, 795.)" (Batt, at p. 77.) The Batt court also stated that although article XIII, section 32 "expressly applies to the state, we have accepted that its guiding principle is equally applicable to smaller units of government." (Batt, at p. 84, citing Flying Dutchman Park, Inc. v. City and County of San Francisco (2001) 93 Cal.App.4th 1129 [113 Cal.Rptr.2d 690] (Flying Dutchman).)
In Writers Guild of America, West, Inc. v. City of Los Angeles (2000) 77 Cal.App.4th 475 [91 Cal.Rptr.2d 603] (Writers Guild), the plaintiffs sought to enjoin the collection of a city business tax. The court, however, held that the plaintiffs could not obtain an injunction in light of the public policy against injunctions prohibiting the collection of a tax, as expressed by article XIII, section 32 and the cases interpreting that provision. (77 Cal.App.4th at p. 483.)
Similarly, in Flying Dutchman, supra, 93 Cal.App.4th 1129, the plaintiffs sought an injunction prohibiting the enforcement of a city parking tax. The plaintiff Flying Dutchman urged the court not to follow the Writers Guild decision. However, the court held: "[W]e see no need to reexamine the issues resolved in Writers Guild, particularly its holding that the prepayment requirement for obtaining judicial review applies equally to local taxes as well as state taxes. Because the wisdom of preventing the judiciary from interfering with tax schemes pertains as strongly to local taxes as it does to *386 state taxes, we would be hard pressed to endorse the distinction Flying Dutchman attempts to make based on the identity of the taxing entity." (Id. at p. 1137.)[11]
Likewise, we are hard pressed to distinguish this case from Woosley based on the identity of the taxing entity. The wisdom and language of Woosley pertains as strongly to claims for refunds for local taxes as it does to claims for refunds of state taxes.

DISPOSITION
The order striking the class action allegations is affirmed. The City shall recover costs on appeal.
Klein, P. J., concurred.
KLEIN, P. J., Concurring.
I concur in the majority opinion. I write separately to explain my change of position with respect to whether Government Code section 910 authorizes a class claim for tax refunds. Although I joined in this court's opinion in County of Los Angeles v. Superior Court (2008) 159 Cal.App.4th 353 [71 Cal.Rptr.3d 485] (Oronoz), upon further consideration, I believe the majority opinion herein sets forth the better view.
I am mindful the California Supreme Court denied a petition for review in Oronoz. However, the order of denial is not an expression of the Supreme Court on the correctness of the Court of Appeal opinion. (DiGenova v. State Board of Education (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, §§ 501, 502, 932(5).)
In view of the confusion in this area, it would be helpful for the Supreme Court to grant review in this case in order to resolve the conflict between the Oronoz decision and the majority opinion herein.
Review is further warranted because the question presented, i.e., whether Government Code section 910 authorizes a class claim for tax refunds, is a major statewide issue with serious implications for the public fisc. Currently, this division alone has at least two other appeals involving the same issue.
*387 With these observations, I concur in the court's opinion authored by Justice Kitching.
CROSKEY, J., Dissenting.
I respectfully dissent. We held in County of Los Angeles v. Superior Court (2008) 159 Cal.App.4th 353, 367 [71 Cal.Rptr.3d 485] (Oronoz), that a class claim for tax refunds against a local public entity was permissible under Government Code section 910 in the absence of a specific tax refund statute prescribing procedures to claim a refund of the taxes at issue. I continue to adhere to that view.
Government Code section 910 establishes procedural requirements for claims against the state and local public entities generally. Section 910 does not mention tax refunds. Government Code section 905, subdivision (a) states that claims under statutes prescribing procedures for tax refunds are excepted from the claim presentation requirements of section 910. Thus, section 905, subdivision (a) distinguishes claims under statutes prescribing procedures for tax refunds from claims subject to the general claim presentation requirements of section 910.
City of San Jose v. Superior Court (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701] (City of San Jose) held that the word "claimant" in Government Code section 910 referred to the class rather than to each individual class member and that a class claim was permissible under section 910 without the need for an individual claim by each class member. (City of San Jose, at p. 457.) City of San Jose involved a claim governed by the general claim presentation requirement of section 910, rather than a claim governed by a statute prescribing procedures specifically for tax refunds.
Woosley v. State of California (1992) 3 Cal.4th 758 [13 Cal.Rptr.2d 30, 838 P.2d 758] (Woosley) involved claims against the state for refunds of vehicle license fees and use taxes. Woosley stated that article XIII, section 32 of the California Constitution (section 32)[1] required tax refund claims to be made in the manner prescribed by the Legislature and that "[t]his constitutional limitation rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues. [Citation.]" (Woosley, at p. 789.) Woosley stated that vehicle license fees and use taxes were excise taxes within the ambit of section 32 and that the Legislature had prescribed procedures for seeking refunds of those taxes. (Woosley, at p. 789.) Construing the applicable tax refund statutes in light of section 32, Woosley *388 concluded that those statutes did not authorize class claims. (Woosley, at pp. 789-792.) Woosley neither construed nor applied Government Code section 910.
Woosley disapproved several Court of Appeal opinions that had "reason[ed] by analogy to the claims statute construed in City of San Jose that the existing tax-refund statutes could and should be interpreted to authorize the filing of class claims. [Citations.]" (Woosley, supra, 3 Cal.4th at p. 788.) Woosley stated, "we conclude, for the reasons that follow, that the holding in City of San Jose v. Superior Court, supra, 12 Cal.3d 447, should not be extended to include claims for tax refunds." (Id. at p. 789.) The reasons that followed were that the applicable tax refund statutes, construed in light of section 32, did not authorize class claims. (Woosley, at pp. 789-792.) Thus, Woosley did not limit or call into question the holding from City of San Jose as applied to claims under Government Code section 910, but held only that the rule from City of San Jose should not be extended to claims governed by statutes prescribing procedures specifically for tax refunds.
Section 32 is inapplicable here because it applies only to actions against the state. (Pacific Gas & Electric Co. v. State Bd. of Equalization (1980) 27 Cal.3d 277, 281, fn. 6 [165 Cal.Rptr. 122, 611 P.2d 463] (Pacific Gas & Electric); Oronoz, supra, 159 Cal.App.4th at p. 363, fn. 6.)[2] The majority does not assert otherwise, but instead invokes the policy underlying section 32 and applies that policy, rather than section 32 itself, to this action against a local public entity and involving local taxes. Many statutes and constitutional provisions are motivated by policies that, construed broadly, would support provisions broader than those actually enacted. To apply the policy underlying a provision rather than the provision itself means, essentially, rewriting the provision by substituting the court's own determination as to the desired scope of the law for that of the enacting body. I would decline to follow the Court of Appeal opinions that have done so.
*389 Absent a specific tax refund statute prescribing procedures to seek a refund of the telephone user tax here at issue, I would follow our opinion in Oronoz, supra, 159 Cal.App.4th 353, by holding that the claim is governed by Government Code section 910 and that a class claim is permissible under the rule from City of San Jose, supra, 12 Cal.3d 447.
NOTES
[1] Shortly after Ardon filed suit, the City amended Los Angeles Municipal Code section 21.1.3 to delete any reference to the FET. The amending ordinance was passed by the city council on January 9, 2007. It states "the FET was not a basis or authority for the City's imposition of the TUT ..." and that the TUT's reference to the FET "was added in 1967, shortly after the TUT was adopted, for the administrative convenience of telephone service providers, who were able to bill customers based on an existing tax base." (L.A. Ord. No. 178219.)
[2] During the pendency of this appeal, on February 5, 2008, the voters of the City adopted Proposition S, an ordinance which amended article 1.1 of chapter 2 of the Los Angeles Municipal Code to modernize and clarify the TUT by replacing it with a Communications Users Tax. Ardon concedes that the approval of Proposition S moots his claims for declaratory and injunctive relief to prevent further improper collection of the TUT.
[3] This appeal is from an interlocutory order striking Ardon's class allegations. The order was appealable because it was tantamount to a dismissal of the action as to all members of the class other than Ardon. (See Richmond v. Dart Industries, Inc. (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23]; Daar v. Yellow Cab Co. (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732].)
[4] Ardon also purports to challenge various aspects of the trial court's ruling on the demurrer. At this juncture, however, appellate review is confined to the order insofar as it struck the class action allegations. Appellate review of the other rulings by the trial court will have to await any appeal from the final judgment.
[5] Ardon seeks "money or damages" within the meaning of the Government Claims Act. (See generally City of Los Angeles v. Superior Court (2008) 168 Cal.App.4th 422, 427-430 [85 Cal.Rptr.3d 560].)
[6] Section 21.1.12 was amended effective March 15, 2008. (L.A. Ord. No. 179,686.)
[7] Section 21.1.12, former subdivision (a) provided in relevant part: "The tax imposed by this article shall not apply to any individual 62 years of age or older or any disabled individual who uses telephone, electric, or gas services in or upon any premises occupied by such individual, provided the combined adjusted gross income (as used for purposes of the California Personal Income Tax Law) of all members of the household in which such individual resided was less than Ten Thousand Nine Hundred and Fifty Dollars ($10,950) for the calendar year prior to the fiscal year (July 1 through June 30) for which the exemption provided in this Article is applied for."
[8] Section 910 states: "A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following: [¶] (a) The name and post office address of the claimant. [¶] (b) The post office address to which the person presenting the claim desires notices to be sent. [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted. [¶] (d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim. [¶] (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known. [¶] (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim . . . ."
[9] After Santa Barbara Optical, in 1987, the Legislature amended Revenue and Taxation Code section 6904 to permit class claims for sales and use tax refunds. (Stats. 1987, ch. 38, § 5, p. 101.) Similarly, after Lattin, in 1993, the Legislature enacted Revenue and Taxation Code section 19322, which allows class claims for income tax refunds. (Stats. 1993, ch. 31, § 26, p. 152.) The Legislature, however, strictly limited the means by which such class claims could be filed. (See fn. 10, post.)
[10] To present a claim on behalf of a class for a sales or use tax refund or for an income tax refund, the purported class representative must obtain a written authorization from "each taxpayer sought to be included in the class." (Rev. & Tax. Code, §§ 6904, subd. (b)(1), 19322, subd. (a).)
[11] See also Macy's Dept. Stores, Inc. v. City and County of San Francisco (2006) 143 Cal.App.4th 1444, 1457, footnote 23 [50 Cal.Rptr.3d 79] ("As Macy's appears to recognize, its argument that article XIII, section 32 of the California Constitution applies only to statewide taxes was rejected in [Flying Dutchman]."); Rickley v. County of Los Angeles (2004) 114 Cal.App.4th 1002, 1013 [8 Cal.Rptr.3d 406] (applying policy of art. XIII, § 32 to claim for declaratory relief regarding collection of county taxes).
[1] Section 32 states: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."
[2] A similar provision appeared in former article XIII, section 15 of the California Constitution until November 1974, when the voters repealed former article XIII and added a new article XIII, including section 32. (Assem. Const. Amend. No. 32, Stats. 1974 (1973-1974 Reg. Sess.) res. ch. 70, pp. 3678, 3690.) Pacific Gas & Electric, supra, 27 Cal.3d at page 280, footnote 3 characterized this constitutional amendment as one of "numerous minor revisions and renumberings" of essentially the same provision. Eisley v. Mohan (1948) 31 Cal.2d 637, 641 [192 P.2d 5] (Eisley) stated that former article XIII, section 15 "applies only to an action against the state or an officer thereof with respect to his duties in assessing or collecting a state tax for state purposes." Eisley therefore concluded that the provision did not preclude a proceeding against a county assessor challenging the assessment of a county real property tax. (Eisley, at pp. 641-642.) Citing Eisley, Pacific Gas & Electric stated, "Section 32 applies only to actions against the state." (Pacific Gas & Electric, supra, 27 Cal.3d at p. 281, fn. 6.)